Nos. 23-7073, 23-7074, and 23-7075 (consolidated)

---

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

IN RE: JEFFREY B. CLARK,

Appellant,

v.

D.C. OFFICE OF DISCIPLINARY COUNSEL,

Appellee

---

On Direct Appeal Pursuant to 28 U.S.C. § 1447(d)

---

# APPELLANT'S MOTION FOR STAY PENDING APPEAL

---

Charles Burnham
DC Bar No. 1003464
Burnham and Gorokhov, PLLC
1424 K Street, NW, Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com

Harry W. MacDougald
Georgia Bar No. 463076
Caldwell, Carlson, Elliott &
DeLoach LLP
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com

*Attorneys for Apellant in Case Nos. 23-7073, 23-704 and 23-7025*

July 14, 2023

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), the Appellant states as follows:

## (A)    Parties and *Amici*

**APPELANT**:

**Case Nos. 23-7073, 23-704 and 23-7025**:

> Jeffrey B. Clark

**APPELLEE:**

District of Columbia Bar, Office of Disciplinary Counsel

***AMICI CURIAE*:**

None for either party at this time.

## (B)    Rulings Under Review

Memorandum and Order remanding case to the District of Columbia Court of Appeals and its adjuncts, the Board of Professional Responsibility and Hearing Committee 12.

## (C)    Related Cases

There are no prior or pending related cases.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ............ ii

TABLE OF CONTENTS.................................................................. iii

TABLE OF AUTHORITIES ............................................................ iv

PROCEDURAL BACKGROUND........................................................2

ARGUMENT AND CITATION OF AUTHORITY .................................4

I. **The *BP* Case Contemplates That Appealed Federal Officer Removals Are Continuations of the Automatic District Court Stay in Section 1446(d).** ........................................................4

II. **A Stay of Local Proceedings Should Be Granted Because Remand Has Not Yet Occurred Under the Plain Text of Section 1447(c).** ..........9

III. **A Stay Should Also Be Granted Under the Traditional Four-Part Test of a Proper Exercise of Equitable Discretion.** ...............................11

   A. Respondent Has a Strong Likelihood of Prevailing in His Federal Appeal. .....................................................................12

   B. Subjecting Mr. Clark to an Administrative Trial Before the Removal Jurisdiction Dispute Is Fully Adjudicated Would Cause Irreparable Harm by Defeating the Congressional Directive to Hold Merits Proceedings Only in an Article III Forum. .................................17

   C. There Would Be No Prejudice to the DCCA, the D.C. Bar, or to Others. .....................................................................19

   D. The Public Interest Suffers If the Stay Is Not Granted. ...........................20

CONCLUSION .........................................................................20

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME AND TYPEFACE LIMITATIONS .......................................................................22

# TABLE OF AUTHORITIES

## Cases

*Agostini v. Piper Aircraft Corp.*, 729 F.3d 350 (3d Cir. 2013) ...............................10

*Boron Oil Co. v. Downie*, 873 F.2d 67 (4th Cir. 1989) ...........................................15

*Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408 (D.C. Cir. 1995)...16

*Colorado v. Symes*, 286 U.S. 510 (1932)................................................................14

*Florida v. Cohen*, 887 F.2d 1451 (11th Cir.1989).................................................15

*Hexamer v. Foreness*, 981 F.2d 821 (5th Cir. 1993) .............................................16

*Kern v. Huidekoper*, 103 U.S. 485 (1881) ................................................................8

*Kolibash v. Committee on Legal Ethics of the West Virginia Bar*, 872 F.2d 571
    (4th Cir. 1989) .....................................................................................................14

*Kungys v. United States*, 485 U.S. 759 (1988) .......................................................11

*Louisiana v. Sparks*, 978 F.2d 226 (5th Cir.1992)..................................................15

*Nationwide Investors v. Miller*, 793 F.2d 1044 (9th Cir. 1986) ............................16

*Nken v. Holder*, 556 U.S. 418 (2009) .....................................................................12

*Roman Catholic Archdiocese of San Juan, P.R. v. Acevedo Feliciano*, 140 S.
    Ct. 696 (2020).........................................................................................................8

*See North Carolina v. Carr*, 386 F.2d 129 (4th Cir. 1967) ...................................15

*Shapiro v. Logistec USA, Inc.*, 412 F.3d 307 (2d Cir. 2005)..................................10

*Sherley v. Sebellius*, 644 F.3d 388 (D.C. Cir. 2011)...............................................12

*Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217 (3d Cir. 1995)......................10

*Willingham v. Morgan*, 395 U.S. 402 (1969) ..........................................................14

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008) .................12

*Wisconsin v. Schaffer*, 565 F.2d 961 (7th Cir.1977)...............................................15

## Statutes

28 U.S.C. § 1331 ......................................................................................................14

28 U.S.C. § 1441 ......................................................................................................14

28 U.S.C. § 1442........................................................... 2, 5, 6, 8, 13, 14, 15, 16, 17

28 U.S.C. § 1445......................................................................................................13

28 U.S.C. § 1447(c) ................................................... 1, 3, 4, 8, 9, 10, 11

28 U.S.C. § 1447(d) ................................................................................. 1, 2, 5, 8

Pub. L. 112-239, 126 Stat. 1969, § 1087 (Jan. 2, 2013) ............................ 13, 16, 20

**Rules**

D.C. Bar Rule XI, § 4 ............................................................................................17
D.C. Bar Rule XI, § 9 ............................................................................................17

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 17 ...............................................................................20
U.S. Const., art. II, § 3 ........................................................................................18

**Other References**

David A. Furlow & Charles W. Kelly, *Removal and Remand: When Does a Federal District Court Lose Jurisdiction Over a Case Remanded to State Court?* 41 Sw. L.J. 999 (1987) ..........................................................................10

## MOTION FOR STAY PENDING APPEAL

Pursuant to Federal Rule of Appellate Procedure 8(a)(2), Respondent-Appellant Jeffrey B. Clark hereby moves for a stay pending appeal of the District Court's remand order dated June 8, 2023 and accompanying memorandum opinion.

We submit that under 28 U.S.C. § 1446(d) and *BP plc. v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532 (2021), a stay motion should not be necessary because the local D.C. Bar process is already inherently stayed pending appeal. Moreover, the remand to the D.C. Court of Appeals ("DCCA") and Board of Professional Responsibility ("BPR") has not even been completed as required by 28 U.S.C. § 1447(c). And now that jurisdiction is vested in this Court, neither the DCCA, the BPR, nor its Hearing Committee 12 can proceed until the appeal issues have been resolved and Section 1447(c) is complied with post appeal.

Because ODC has expressed a strong desire to go to trial against Mr. Clark sometime after Labor Day and because we know that its lawyers appear to think (wrongly) that mere phone calls to the District Court Clerk's Office can dispense with Section 1447(c)'s requirement to mail out a certified copy of the remand order, we are compelled to seek a stay. Before filing this Motion we have sought to obtain relief in the DCCA, the Hearing Committee, and the District Court. None of it has been granted or denied.

## PROCEDURAL BACKGROUND

The District Court entered its remand order on June 8, 2023. On June 11, 2023, Mr. Clark filed a notice of appeal pursuant to Section 1447(d), which provides for appeal as of right from remand orders in cases removed under the federal officer removal statute. 28 U.S.C. § 1442. On June 12, 2023, Mr. Clark moved the DCCA to continue its January 17, 2023 order holding its proceedings (a motion to enforce a subpoena) in abeyance and to extend the abeyance to proceedings pending in Hearing Committee 12.

The case was first removed on October 17, 2022 pursuant to 28 U.S.C. § 1442, § 1441, and related statutes. Thereafter, BPR marked any documents sent to them by either side as "lodged" rather than "filed." Notwithstanding the stay provisions of Section 1446(d), ODC did its utmost to continue litigating locally, peppering Mr. Clark with briefs, a new subpoena, and other filings. Only after the DCCA order on January 17 holding the proceedings in abeyance pending resolution of removal jurisdiction did ODC stand down.

After the District Court issued its Remand Order on June 8, 2023, ODC quickly notified BPR Hearing Committee 12, and its Chair. Next, on June 16, the Hearing Committee ordered the parties to file status reports by June 23, 2023.

In his June 23 status report, Mr. Clark noted the pendency of this appeal and of his motion in the DCCA to hold all proceedings in abeyance/deferral until after

this appeal and any follow-on appellate review is complete. Nevertheless, on July 5, 2023, the Hearing Committee Chair rejected Mr. Clark's arguments and set a hearing for July 12, 2023, directing the parties to meet and confer on scheduling an evidentiary hearing, without regard to the pendency of this appeal. Later that same day, Mr. Clark moved the DCCA to expedite its consideration of the motion to continue and extend the abeyance to all proceedings. We sought a ruling by July 11, 2023.

We filed separate motions to the Hearing Committee to reconsider its July 5 order and later to vacate both that order and the June 23 Order in light of Section 1447(c) noncompliance. The Hearing Committee postponed the July 12 hearing but kept Mr. Clark's motions under advisement after ODC filed an affidavit explaining why Section 1447(c) should not be complied with in its view. We moved to disregard that affidavit as it was based on hearsay and double hearsay and relates the contents of a mere telephone conversation with District Court Clerk's Office personnel.

The DCCA has also not ruled on the motions pending before it. Accordingly, we filed a motion for a stay in the District Court under FRAP 8(a)(1), requesting a ruling before 5 p.m. on July 13, 2023 on the same three grounds we present below here. No ruling has issued below and, indeed, ODC has not filed to oppose our District Court stay motion. Hence, out of an abundance of caution, we now present this FRAP 8(a)(2) Motion.

## ARGUMENT AND CITATION OF AUTHORITY

***First***, we argue that the Supreme Court's decision in *BP, plc v. Mayor and City Council of Baltimore,* 141 S.Ct. 1532 (2021), controls. *BP* resolved a circuit split concerning federal officer removal appellate rights under Section 1446(d) in pellucid terms that make seeking a discretionary stay here unnecessary. *BP*'s rationale is that an appeal continues Section 1446(d)'s command that the state/D.C. courts "shall proceed no further unless and until the case is remanded" until ***after*** a final determination concerning the propriety of the federal officer removal. *Infra* Section I.

***Second***, we argue that no remand has actually yet occurred under Section 1447(c) because no certified copy of the June 8 remand order has been mailed by the District Court's Clerk or received by a local D.C. clerk authorized to receive it. *Infra* Section II.

***Third***, and in the alternative, we argue that Mr. Clark can satisfy the traditional four-factor test for obtaining a discretionary stay pending appeal. Under Supreme Court precedent, Section 1446(d), and under Section 1447(c), a mandatory stay should be granted. *Infra* Section III.

## I.  THE *BP* CASE CONTEMPLATES THAT APPEALED FEDERAL OFFICER REMOVALS ARE CONTINUATIONS OF THE AUTOMATIC DISTRICT COURT STAY IN SECTION 1446(d).

In *BP*, the City of Baltimore brought common law nuisance and tort claims

against BP involving climate change. 141 S. Ct. at 1535; *see also id.* at 1546 (Sotomayor, J., dissenting). BP removed that case from state court to federal court on a variety of theories including by invoking the federal officer removal statute, Section 1442. *BP*, 141 S. Ct. at 1535.

The District of Maryland ordered a remand and BP appealed. The Fourth Circuit affirmed. The Supreme Court took the case to resolve a circuit split on the issue of whether, in a case involving a federal officer removal, Section 1447(d) permits all issues in the order, including non-federal-officer-based removal grounds, to go up on appeal. Baltimore argued that only the federal-officer removal issues were appealable because the substance of remand orders on other grounds is typically not reviewable. *Id.* at 1537. The Supreme Court vacated the Fourth Circuit's decision and remanded after holding that "when a district court's removal order rejects all of the defendants' grounds for removal, § 1447(d) authorizes a court of appeals to review each and every one of them." *Id.* at 1538.

In reaching its holding, the Supreme Court rejected several arguments by the City. The first was Baltimore's argument that "[b]arring appellate review of remand orders … serves the worthy goal of allowing the parties to get on with litigating the merits of their cases in state court." *Id.* at 1542.

> For that subset of cases [*i.e.*, when Congress has provided an exception to the non-appealability of remand orders], Congress has expressed a heightened concern for accuracy, authorized appellate review, ***and accepted the delay it can entail***.

*BP*, 141 S. Ct. at 1542 (emphasis added). The inherent delay in allowing appeals in federal officer removal cases was a trade-off intended by Congress: "***Here, too, Congress has deemed it appropriate to allow appellate review <u>before</u> a district court may remand a case to state court***." *BP*, 141 S. Ct. at 1536 (emphasis added).

Finally, the majority opinion, written by Justice Gorsuch, reasoned that the delay-based policy argument was wrong on its own terms:

> In fact, allowing a fuller form of appellate review may actually help expedite some appeals. Suppose a court of appeals finds the § 1442 or § 1443 issue a difficult and close one, but believes removal is clearly and easily warranted on another basis. ***Allowing the court to address that easier question and avoid harder ones may facilitate a prompter resolution of the proceeding for all involved.***

*Id.* (emphasis added).

In sum, Section 1446(d) means what it says: "a state court may not proceed 'further unless and until the case is remanded.'" *BP*, 141 S. Ct. at 1539 (quoting Section 1446(d)). Operating in conjunction with Section 1447(d) interlocutory appeals, when federal-officer removals are one of the grounds for removal involved, a remand cannot be ordered purely at the District Court stage. This would frustrate the *BP* majority's "heightened concern for accuracy." Moreover, to create parallel track litigation where an appeal goes forward on removal jurisdiction in the Article III court here while a federal officer like Mr. Clark (a former high-ranking U.S. Justice Department official) is subject to a merits trial in the Article I process removed from defeats the whole purpose of guaranteeing a federal forum to the

federal officer and could potentially moot a valuable interlocutory appeal right designed to protect federal interests and equities. For these reasons, the state or District of Columbia process removed from should not be allowed to reacquire jurisdiction to run in a parallel track until all appellate proceedings under the rubric of Section 1447(d) have run their course.

In this case, the District Court held that it had no subject-matter jurisdiction over Bar disciplinary proceedings under Sections 1441 or 1442 because, in its view, they were neither civil nor criminal actions. Where, as here, invalid remand orders like this one are appealable under Section 1447(d), a stay of the disciplinary process of the DCCA and its adjuncts is plainly warranted. Beginning with the original notice of removal (and continuing into the second and third removals that ODC's vexatious attempts to continue litigating subpoenas in the DCCA triggered), Mr. Clark argued at all times that Section 1446(d) automatically stays the local proceedings. Notice of Removal, Dkt. # 1 at ¶¶ 77-79 (incorporated here by reference). The statutory bar applies to any proceedings seeking a judicial order, focusing not on the nature of the forum but on the outcomes produced by the forum. Section 1442(d)(1). Disciplinary Counsel has nonetheless sought to enforce subpoenas and has recently informed counsel that he seeks a judicial order disbarring Mr. Clark for confidential communications (leaked by others, but not Mr. Clark) made within DOJ and the Oval Office. We acted out of a fear that an express stay is necessary here because

the Hearing Committee and ODC seem determined to proceed unless and until they are told to obey the Section 1446(d) and *BP* ban on post-removal state/D.C. court proceedings.

This outcome makes perfect sense. If Mr. Clark prevails in this appeal, post-remand merits litigation in the Bar processes would be a wasteful nullity. State/D.C. court orders issued in between the time of removal and remand are void. *See Roman Catholic Archdiocese of San Juan, P.R. v. Acevedo Feliciano*, 140 S. Ct. 696, 700 (2020).[1] Here, Mr. Clark is entitled to a federal Article III forum under Section 1442 and an appeal as of right on that issue to the D.C. Circuit under Section 1447(d). He should not be put to the trouble and expense of litigating in two forums until his appeal rights have been exhausted.

---

[1] "Once a notice of removal is filed, 'the State court shall proceed no further unless and until the case is remanded.' 28 U. S. C. § 1446(d). The state court 'los[es] all jurisdiction over the case, and, ***being without jurisdiction, its subsequent proceedings and judgment [are] not ... simply erroneous, but absolutely void***.' *Kern v. Huidekoper*, 103 U.S. 485, 493 (1881). 'Every order thereafter made in that court [is] *coram non judice*," meaning 'not before a judge.' *Steamship Co. v. Tugman*, 106 U.S. 118, 122 (1882) …." *Roman Catholic Archdiocese of San Juan*, 140 S. Ct. at 700 (footnote omitted).

Here, since June 16, 2023, Mr. Clark has been being subjected to Hearing Committee Chair orders that are void because they were issued, at the very least, prior to compliance with Section 1447(c). They were also issued in violation of the *BP* case's teachings and the continuance of Section 1446(d)'s automatic stay.

## II.  A STAY OF LOCAL PROCEEDINGS SHOULD BE GRANTED BECAUSE REMAND HAS NOT YET OCCURRED UNDER THE PLAIN TEXT OF SECTION 1447(c).

In relevant part, Section 1447(c) (emphasis added) provides as follows: "*A certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court.* The State court may *thereupon* proceed with such case." Even putting aside the commands and logic of *BP*, the plain text of this statute indicates that remand orders are not immediately effective. Instead, the District Court Clerk must first mail a certified copy of the remand order to the Hearing Committee (presumably via the BPR or the DCCA). The statute also appears to contemplate receipt of the certified copy as mailed by the District Court clerk by the state/D.C. clerk.

As of our filing this Motion, the District Court Clerk has not completed such a mailing. We moved in the Hearing Committee to vacate its post-remand orders because this step had not been completed. In response, ODC admits it has not been completed, and offered the Hearing Committee only compound absurdities in an affidavit filed July 12, 2023 claiming that noncompliance does not matter. As noted above, the Chair of the Hearing Committee has the motion to vacate under advisement.

Judicial precedent in two Circuits (the Second and Third) supports our argument that, under these circumstances, no remand has occurred:

According to our precedent, the mailing of a certified copy of the remand order to state court is the event that formally transfers jurisdiction from a district court within this Circuit to a state court. *Trans Penn Wax Corp. v. McCandless*, 50 F.3d 217, 225 (3d Cir. 1995) ("The general rule is that a district court loses jurisdiction over a case once it has completed the remand by sending a certified copy of the remand order to state court.") ….

**In our view, the text of 28 U.S.C. § 1447(c) establishes that jurisdiction remains with the district court until the jurisdiction-transferring event has occurred: "[a] certified copy of the order of remand shall be mailed by the clerk to the clerk of the State court. The State court may thereupon proceed with such case."** 28 U.S.C. § 1447(c).[2]

FN2. This accords with the rule recognized by the Court of Appeals for the Second Circuit as well. *Shapiro v. Logistec USA, Inc.*, 412 F.3d 307, 312 (2d Cir. 2005) ("**Section 1447(c) ... is not self-executing**").

*Agostini v. Piper Aircraft Corp.*, 729 F.3d 350, 355-56 & n.2 (3d Cir. 2013) (paragraph breaks and emphasis added).

According to scholars, courts have reacted differently to the import of Section 1447(c) (setting out (1) some courts have held oral orders to remand are immediately effective; (2) others say remands are effective once the certified mailing occurs; and (3) others say effectiveness follows mailing *and* receipt). *See* David A. Furlow & Charles W. Kelly, *Removal and Remand: When Does a Federal District Court Lose Jurisdiction Over a Case Remanded to State Court?* 41 Sw. L.J. 999, 1002 (1987) (footnotes omitted).

The first approach must be rejected. Section 1447(c) speaks, in relevant part, in mandatory terms. It directs that the federal court clerk "shall" "mail[]" a "certified

copy of the order of remand" to the clerk of the state/D.C. court. And, even more importantly, Section 1447(c)'s last sentence states that only after this mailing occurs "may" the state/D.C. court "***thereupon*** proceed with such case." (Emphasis added.) The word "thereupon" becomes surplusage if the mailing (or impliedly, the receipt of the mailing by the state/D.C. court clerk) is not the operative date for when jurisdiction is returned to the state/D.C. court. And it violates the cardinal rule of statutory construction to interpret the word "thereupon" as if it were surplusage, which is what possibility (1) necessarily entails. *E.g., Kungys v. United States*, 485 U.S. 759, 778 (1988) (plurality) (explaining and applying this cardinal rule).

The only ambiguity in Section 1447(c) is whether the "thereupon" refers to the act of mailing alone (the equivalent of contract law's "mailbox rule") or to the receipt of the certified order by the state/D.C. clerk. As to that choice, we urge the third reading of Section 1447(c), that a remand order can be effective no earlier than the receipt of a certified copy from the District Court Clerk mailed to the state/D.C. clerk. But at the very least, the second reading of the statute should be adopted. Under either of these readings, the DCCA and its adjuncts' disciplinary processes do not yet have the power to resume litigation of this case.

III.   **A STAY SHOULD ALSO BE GRANTED UNDER THE TRADITIONAL FOUR-PART TEST OF A PROPER EXERCISE OF EQUITABLE DISCRETION.**

The four elements of a stay pending appeal are:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009). They are all met in this case.

The Court has discretion on whether to grant a stay according to the individual circumstances of the case. *Id*. at 433-34.

In *Nken* the Court noted that:

There is substantial overlap between these and the factors governing preliminary injunctions, *see Winter v. Natural Resources Defense Council, Inc*., 555 U.S. 7, 24 (2008); not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined.

*Id*. at 434.[2] "The first two factors of the traditional standard are the most critical."

*Id*.

A.    ***Respondent Has a Strong Likelihood of Prevailing in His Federal Appeal.***

This is a case where adjuncts of the DCCA (ODC and, at a first stage, Hearing Committee 12) seek to police the discretionary acts and policy-related communications shared by an Assistant Attorney General with the President of the

---

[2] Lower courts have differed on whether *Winter* overrules the sliding scale for evaluating the four-factor test for granting a preliminary injunction. *See Sherley v. Sebellius*, 644 F.3d 388, 393 (D.C. Cir. 2011) (noting split). Especially given both that all four equitable factors are met here ***and*** that there is a strong *BP*- and Section 1447(d)-based argument that an automatic stay applies, even before alternatively getting to the equitable factors, the Court need not wade into that issue.

United States in the Oval Office and among senior Justice Department officials before that. We submit that *BP* expressly rejects the proposition that litigation on the merits of such a case can continue while the propriety of the remand under Section 1442 is on appeal.

The language and purpose of the federal officer removal statute, Section 1442, as well as the clear weight of authority, support removal and demonstrate that Mr. Clark has a strong likelihood of prevailing on the merits. The plain language of the federal officer removal statute covers "all" "civil actions" and "criminal prosecutions." The statute was amended by Pub. L. 112-239, 126 Stat. 1969, § 1087 (Jan. 2, 2013), to broaden the definition of "civil actions" and "criminal prosecutions" to include not just subpoenas, but "***any proceeding … to the extent that in such proceeding a judicial order … is sought or issued***." This bar discipline case is unquestionably such a proceeding in that ODC seeks  discipline that can only be imposed by an order of the DCCA (disbarment).

Additionally, Congress knows how to specify which cases are unremovable. 28 U.S.C. § 1445 expressly forbids removal of (a) cases involving railroads and receivers/trustees; (b) cases under $10,000 against carriers/receivers/trustees; (c) worker compensation claims; and (d) cases involving section 40302 of the Violence Against Women Act of 1994. Since State/D.C. bar disciplinary cases do not fit into any of these categories, the plain language of Section 1442 and its related complex

of removal statutes control and this case was properly removed.[3]

The District Court, however, held that bar disciplinary proceedings are neither civil nor criminal and therefore fall into a gap between the two and cannot be removed. There is no such gap. Section 1442 applies to "***any proceeding … to the extent that in such proceeding a judicial order … is sought or issued***."

The Supreme Court has repeatedly stressed the need for the courts to use a broad reading of the federal officer removal statute. "The federal officer removal statute is ***not*** 'narrow' or 'limited.' *Colorado v. Symes*, 286 U.S. 510, 517 (1932). At the very least, it is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law." *Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969). The statute and the oft-repeated policy of broad interpretation are to protect the supremacy of the federal government. Accordingly, most federal circuits hold that hybrid matters against federal officers are removable.

Most directly on point is the Fourth Circuit decision in *Kolibash v. Committee on Legal Ethics of the West Virginia Bar*, 872 F.2d 571, 576 (4th Cir. 1989) (Wilkinson, J.), holding a bar discipline matter removable and that "[t]he form that

---

[3] We also removed on Section 1331federal question grounds under Section 1441. Dkt. # 1 ¶¶ at 60-74. And under the *BP* decision, we are entitled to take that issue up to this Court as well, even though ordinarily remand of a Section 1441 remand order are not independently appealable. But since the Section 1442 removal dispute is directly appealable, the Section 1441 ground of removal travels with it.

the state action takes is therefore not controlling; 'it is the state's power to subject federal officers to the state's process that § 1442(a)(1) curbs.'" While the District Court distinguished *Kolibash*, *Kolibash* remains the most closely analogous reported federal appellate decision (it differs only because the District is not a State, but here it is trying to operate in an analogous capacity). The only cases to the contrary are a smattering of district court decisions, which are not precedential.[4]

The clear weight of authority with respect to other types of civil-criminal hybrid proceedings favors removal. Contempt proceedings, though hybrid in nature, were held removable in the Fourth, Fifth, Seventh, and Eleventh Circuits. *North Carolina v. Carr*, 386 F.2d 129, 131 (4th Cir. 1967) ("the statute looks to the substance rather than the form of the state proceeding; this is the reason for the breadth of its language"); *see also Louisiana v. Sparks*, 978 F.2d 226, 231 (5th Cir. 1992); *Florida v. Cohen*, 887 F.2d 1451, 1453 (11th Cir. 1989); *Boron Oil Co. v. Downie*, 873 F.2d 67, 68 (4th Cir. 1989); *Wisconsin v. Schaffer*, 565 F.2d 961, 963–64 (7th Cir.1977) ("We think it unfruitful to quibble over the label affixed to this contempt action. Regardless of whether it is called civil, criminal, or *sui generis*, it

---

[4] The Seventh Circuit did issue a ruling on which ODC relies to avoid the mandatory removal jurisdiction granted by Section 1442. *In re Echeles*, 430 F.2d 347 (7th Cir. 1970) (holding attorney discipline proceedings before an executive committee of the U.S. District Court were neither civil nor criminal). However, that case did not involve removal under Section 1442 and is readily distinguishable as a "drive-by" jurisdiction-related ruling.

clearly falls within the language and intent of the statute.").

Garnishments against federal officers, which are also hybrid in nature, are removable in the Ninth Circuit, *Nationwide Investors v. Miller*, 793 F.2d 1044, 1046 (9th Cir. 1986), but not removable in the Fifth, *see Hexamer v. Foreness*, 981 F.2d 821, 823 (5th Cir. 1993). The existence of a Circuit split here in any area that could be analogized in some way to the hybrid nature of bar discipline cases only reinforces that a stay should be granted until this Court comes down one way or the other and until its views, which may create a circuit split or grave tension, can be reviewed by the Supreme Court.

Even before the broadening amendment to Section 1442(d) in Pub. L. 112-239 explicitly added subpoenas to the list of "actions" that could be removed in 2013, this Court had interpreted the statute broadly to include subpoenas, rejecting the analogously formalistic argument that subpoenas were neither a criminal prosecution nor a civil action. *Brown & Williamson Tobacco Corp. v. Williams*, 62 F.3d 408, 415 (D.C. Cir. 1995) ("We do not believe Congress used the terms "civil action," "against," or "act" in the limited fashion that appellant urges, but rather meant to refer to ***any proceeding*** in which state judicial civil power was invoked against a federal official."). This holding neatly anticipated the amendment to Section 1442(d)(1).

The Court should apply the same reasoning to this case. By its terms,

§ 1442(d) applies to "***any proceeding … to the extent that in such proceeding a judicial order … is sought or issued***". In D.C. Bar discipline cases, serious discipline can only be imposed by order of the D.C. Court of Appeals. D.C. Bar Rule XI, § 9 (any Board recommendation for discipline greater than an informal admonition or reprimand is decided by the D.C. Court of Appeals). And ODC informed us for the first time on July 10, 2023 that it seeks disbarment.

The Board of Professional Responsibility is a creature of the DCCA and draws its power to investigate from D.C. Bar Rule XI, § 4. The Board and its Hearing Committees perform a quintessentially judicial function in the adjudication of Bar discipline cases. The manifest congressional intent that the federal officer removal statute be broadly construed—repeatedly reinforced by the Supreme Court when it has addressed Section 1442 and its predecessors—precludes the sort of outcome-oriented gymnastics that would be required to say that this case is not removable.

Accordingly, Mr. Clark has shown a sufficient likelihood of prevailing on this appeal.

**B.**      ***Subjecting Mr. Clark to an Administrative Trial Before the Removal Jurisdiction Dispute Is Fully Adjudicated Would Cause Irreparable Harm by Defeating the Congressional Directive to Hold Merits Proceedings Only in an Article III Forum.***

Permitting the D.C. Bar to move forward with disciplinary proceedings during the pendency of this appeal would irreparably deprive him of his right to have his federal defenses adjudicated in an Article III forum. If the D.C. Bar, a creature of

Article I, is permitted to proceed to the merits based on an assumption of hypothetical jurisdiction, the congressional intent of Section 1442 will be overthrown — not to mention the wasted time, trouble, judicial resources, and expense should Mr. Clark prevail. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998); *Waleski v. Montgomery, McCracken, Walker & Rhoads, LLP*, 599 U.S. __, 2023 WL 4163195 (Thomas, Gorsuch, and Barrett, JJ., dissenting from *certiorari* denial); *Kaplin v. Central Bank of the Islamic Republic of Iran*, 896 F.3d 501 (D.C. Cir. 2018); *id*. at 517 (Edwards, J., concurring) (expressing his "concern" that the D.C. Circuit's "*Kramer/Chalabi* interpretation of *Steel Co*. appears to conflict with current Supreme Court precedent.")

On the merits, but plainly of some relevance to the jurisdictional analysis and this Motion for Stay, clear separation of powers principles prohibit the D.C. municipal government from intruding into the most selective conclaves of the President of the United States with his senior legal advisors concerning how to exercise his core Article II law enforcement powers. U.S. Const., art. II, § 3 ("[H]e [the President] shall take Care that the Laws be faithfully executed"). Analogous federalism problems would arise as to state bar attempts to intrude into the same sanctums.

If the merits litigation processes of the DCCA and its adjuncts are not stayed (on a mandatory or discretionary basis), then Mr. Clark will be put through local

litigation that will irreparably harm his reputation, as printed news stories, blog entries, TV spots, YouTube rants, and other forms of media are constantly attacking him. This is especially true because the D.C. Bar broadcasts its hearings (trials) on YouTube. The many peals of such bells cannot be un-rung. A stay is warranted to avoid that irreparable harm.

C.   **There Would Be No Prejudice to the DCCA, the D.C. Bar, or to Others.**

The D.C. Bar would not be prejudiced by an explicit stay grant, just as it was not prejudiced the local abeyance from January 2023 to June 2023. ODC contended before the DCCA that, because it is an arm of the DCCA, the "harm to others" factor drops out of the analysis for a stay. Disciplinary Counsel is, by his own admission, the opposing party, and has acted in seeming coordination — though he hotly denies it — with one side of the partisan political divide to pillory Mr. Clark, a prominent conservative Republican who has served under two Republican Presidents with distinction. Disciplinary Counsel began his investigation of Mr. Clark only after receiving a letter from Senator Richard Durbin (not acting as part of a Committee). The disciplinary charges were filed on July 19, 2022 with a first attempt at service (which did not find Mr. Clark at home) on July 20, 2022, just one day before the final January 6 Committee televised hearing. The President, who was the ultimate authority for the advice Mr. Clark delivered, makes no complaint about Mr. Clark to the D.C. Bar. Nor did any of Mr. Clark's former colleagues at DOJ. Nor could they,

without disclosing privileged information. This is the type of political case that, under Section 1442, must be litigated, if at all, in an Article III court.

### D. *The Public Interest Suffers If the Stay Is Not Granted.*

Allowing appeal as of right is a relatively recent addition to the long history of the federal officer removal statutes. Pub. L. 112-239. By so providing, Congress has concluded that the public interest is served by preserving the structure of the relationship between the state or local governments, on the one hand, and the federal government, on the other. That federalism interest is embodied in the Supremacy Clause (though, of course, when the District is involved, this federalism interest morphs into a separation of powers interest). A stay pending appeal in this case vindicates the separation of powers by preventing a politically hostile local government, which is an agency of Congress under the Seat of Government Clause, U.S. Const. art. I, § 8, cl. 17, from penetrating into and/or second-guessing discretionary discussions or decisions at the highest levels of the Executive Branch.

## CONCLUSION

A stay of the District Court's June 8 remand order and opinion should be granted, preferably on the grounds that such a stay is mandatory (Sections I & II, *supra*), but alternatively on the grounds that such a stay meets the four-factor test for granting discretionary stays as a matter of equity (Section III, *supra*).

Given the furious haste of proceedings before Hearing Committee 12

following the remand order, we respectfully request expeditious resolution of this

Motion.

Respectfully submitted this 14th day of July 2023.

/s/ Charles Burnham
Charles Burnham
DC Bar No. 1003464
Burnham and Gorokhov, PLLC
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com

/s/ Harry W. MacDougald
Harry W. MacDougald
Georgia Bar No. 463076
Caldwell, Carlson, Elliott & DeLoach LLP
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com
Admitted Pro Hac Vice in Case No. 1:22-mc-00096-RC

# CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME AND TYPEFACE LIMITATIONS

I HEREBY CERTIFY THAT that the foregoing ***Motion for Stay Pending Appeal*** complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(C). As determined by the Microsoft Word software used to produce this brief, it contains 5,196 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Circuit Rule 32(a)(1).

I further certify that this document is prepared using the Times New Roman font in the 14-point size.

Dated: July 14, 2023

/s/ Harry W. MacDougald
Harry W. MacDougald
Georgia Bar No. 463076

*Counsel for Appellant*

Caldwell, Carlson, Elliott & DeLoach LLP
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com

# CERTIFICATE OF SERVICE

I hereby certify that I have on this day served counsel for the opposing party with a copy of this ***Motion for Stay Pending Appeal*** by filing with the Court's electronic filing system and by email addressed to:

Hamilton P. Fox, Esq.
Jason P. Horrell, Esq.
Office of Disciplinary Counsel
Building A, Room 117
515 5th Street NW
Washington DC 20001
foxp@dcodc.org
horrellj@dcodc.org


This 14th day of July 2022.

/s/ Charles Burnham
Charles Burnham
DC Bar No. 1003464

Burnham and Gorokhov, PLLC
1424 K Street, NW
Suite 500
Washington DC 20005
(202) 386-6920
charles@burnhamgorokhov.com