**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

In re: Jeffrey B. Clark,
*Appellant*

v.

Office of Disciplinary Counsel,
*Appellee*

Appeal from the United States District Court
for the District of Columbia,
Nos. 22-mc-96, 22-mc-117, 23-mc-7

**DISCIPLINARY COUNSEL'S RESPONSE BRIEF**

HAMILTON P. FOX, III
*Disciplinary Counsel*

JULIA L. PORTER
*Deputy Disciplinary Counsel*

*THEODORE (JACK) METZLER
*Senior Assistant Disciplinary Counsel*

OFFICE OF DISCIPLINARY COUNSEL
515 5th Street, N.W.
Building A, Room 117
Washington, D.C. 20001
(202) 454-1746
metzlerj@dcodc.org

* Counsel of Record

# CERTIFICATE AS TO PARTIES,
# RULINGS, AND RELATED CASES

## A.  Parties and Amici

All parties, intervenors, and amici appearing before the district court and in this Court are listed in appellant's opening brief.

## B.  Rulings Under Review

Hon. Rudolph Contreras, Memorandum Opinion Granting Motions to Remand, *In re Clark*, Nos. 1:22-mc-96, 1:22-mc-117, 1:23-mc-7 (D.D.C. Jun. 8, 2023), JA 542-577. No official citation to the opinion exists, but it may be found at 2023 WL 3884119.

Hon. Rudolph Contreras, Order Granting Motions to Remand, *In re Clark*, Nos. 1:22-mc-96, 1:22-mc-117, 1:23-mc-7 (D.D.C. Jun. 8, 2023), JA 541. No official citation to the order exists.

## C.  Related Cases

The case on review has not previously been before this Court or any other court. No case involving substantially the same parties and the same or similar issues is pending in this Court or any other court.

# TABLE OF CONTENTS

Table of Authorities ............................................................ iii

Glossary............................................................................vi

Jurisdiction .......................................................................vi

Questions Presented ........................................................ viii

Statutes Involved..............................................................x

Statement of the Case.........................................................1

A.  Attorney discipline in the District of Columbia ..................1

B.  The conduct at issue in the disciplinary action against Clark ...........3

C.  Procedural history ........................................................5

Summary of the Argument...................................................8

Standard of Review...........................................................11

Argument........................................................................12

I.  None Of The Three Matters Was Removable Under The Text Of
The Removal Statutes. .....................................................12

    A.  The nature of attorney-discipline proceedings. ........................12

    B.  Attorney discipline matters are not "civil actions." ..................13

    C.  Disciplinary matters are not "criminal prosecutions." ...............16

    D.  The disciplinary action was not commenced "in a State
court." ....................................................................17

    E.  Section 1442(d) does not make "any proceeding"
removable. ................................................................20

    F.  The list of nonremovable actions in 28 U.S.C. § 1445 is
immaterial. ...............................................................25

    G.  Disciplinary actions are incompatible with removal................26

II. Clark Is Not A Federal Officer, Cannot Show The Acts Were Taken Under Color Of His Former Federal Office, And His Notice Of Removal Was Untimely.................................................27

    A.   Actions against former federal officers are not removable......................27

    B.   Clark cannot show his acts were taken under color of his former federal office..............................................................30

    C.   Clark's notice of removal was not timely filed. ......................................32

III. The McDade Amendment Confirms That Federal Attorneys Are Subject To Discipline Where They Engage In Their Duties...........................33

Conclusion ......................................................................................37

# TABLE OF AUTHORITIES

## CASES

*Brookens v. United States*, 182 A.3d 123 (D.C. 2018) ............................................17

*Chambers v. Burwell*, 824 F.3d 141 (D.C. Cir. 2016) ............................................28

*Dist. of Columbia v. Exxon Mobil Corp.*,
   89 F.4th 144 (D.C. Cir. 2023) ........................................................ 11, 35

*Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209 (9th Cir. 1980) ..............................33

*Georgia v. Clark*, 2023 WL 7012663 (N.D. Ga. Sept. 29, 2023) ............... 10, 31, 32

*Georgia v. Meadows*, 88 F.4th 1331 (11th Cir. 2023) ................................. 10, 28, 29

*In re Artis*, 883 A.2d 85 (D.C. 2005) ................................................... 14, 15

*In re Blackwell*, 299 A.3d 561 (D.C. 2023) ............................................17

*In re Cleaver-Bascombe*, 986 A.2d 1191 (D.C. 2010) ............................................17

*In re Dobbie*, 305 A.3d 780 (D.C. 2023) ............................................37

*In re Doe*, 801 F. Supp. 478 (D.N.M. 1992) ............................................33

*In re Kline*, 113 A.3d 202 (D.C. 2015) ........................................................37

*In re Thorup*, 432 A.2d 1221 (D.C. 1981) ............................................15

*In re Williams*, 513 A.2d 793 (D.C. 1986) ............................................17

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994) .........................16

*Kolibash v. Committee on Legal Ethics of W.V. Bar*,
   872 F.2d 571 (4th Cir. 1989) ........................................................ 15, 16

*Martin v. Dep't of Justice*, 488 F.3d 446 (D.C. Cir. 2007) ........................ 10, 31, 32

*Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992) ..................................20

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
   566 U.S. 639 (2012) ........................................................ 9, 20

*Russello v. United States*, 464 U.S. 16 (1983) ............................................29

*United States v. Ferrara*, 847 F. Supp. 964 (D.D.C. 1993) ....................................33

*United States v. Pate*, 84 F.4th 1196 (2023) ............................................29

*United States v. United Mine Workers of Am.*,
   330 U.S. 258 (1947) ........................................................6

*Wasserman v. Rodacker*, 557 F.3d 635 (D.C. Cir. 2009) ......................................36

iii

**STATUTES**

\* 28 U.S.C. § 530B ................................................................11

\* 28 U.S.C. § 530B(a) .............................................. 11, 16, 33

\* 28 U.S.C. § 1441(a) ....................................... 6, 8, 12, 15, 17

28 U.S.C. § 1441(b)(2) .........................................................20

\* 28 U.S.C. § 1442(a) .............................. 6, 8, 10, 12, 15, 16, 17

28 U.S.C. § 1442(a)(1) ......................................... 15, 28, 29, 30

28 U.S.C. § 1442(b) .................................................... 19, 29

28 U.S.C. § 1442(d)(1) ........................................... 9, 10, 21, 22

28 U.S.C. § 1442(d)(5) ................................................ 9, 18, 37

28 U.S.C. § 1442(d)(6) ............................................ 9, 19, 25, 37

28 U.S.C. § 1445 ................................................................25

28 U.S.C. § 1446(a) ............................................................32

28 U.S.C. § 1446(g) ............................................................23

28 U.S.C. § 1447(d) .............................................................7

28 U.S.C. § 1451(1) .................................................... 9, 19, 37

28 U.S.C. § 1451(2) .................................................... 9, 18, 37

28 U.S.C. § 1455(b) ............................................................32

D.C. Code § 11-101 ............................................................19

D.C. Code § 11-503 ............................................................19

\* D.C. Code § 11-2501 ................................................... 19, 37

D.C. Code § 11-2503 ...........................................................37

\* District of Columbia Court Reform and Criminal
   Procedure Act of 1970, Pub. L. No. 91-358,
   84 Stat. 475-668 ...................................................... 1, 14, 19

**RULES**

D.C. Bar R. II .................................................................2

D.C. Bar R. X ..................................................................2

D.C. Bar R. XI ............................................................ 2, 14

D.C. Bar R. XI § 4 ................................................................. 2, 18

D.C. Bar R. XI § 5 .....................................................................2

D.C. Bar R. XI § 8 .....................................................................2

D.C. Bar R. XI § 9 ....................................................................2, 3

D.C. Ct. App. R. 46.....................................................................2

Fed. R. Civ. P. 2 .......................................................................13

**OTHER AUTHORITIES**

14C Wright & Miller, Fed. Prac. & Proc. Juris. § 3721
   (Rev. 4th ed.)...................................................................12

14C Wright & Miller, Fed. Prac. & Proc. Juris. § 3731
   (Rev. 4th ed.)...................................................................32

Black's Law Dictionary (10th ed. 2014) .................................13

Senate Judiciary Committee, Majority Staff Report,
   *Subverting Justice: How the Former President and His*
   *Allies Pressured DOJ to Overturn the 2020 Election*...........3

\* Authorities upon which we chiefly rely are marked with asterisks.

## GLOSSARY

The brief does not use abbreviations or acronyms that are not in common usage.

## JURISDICTION

Appellant Jeffrey Clark, an attorney admitted to practice in the District of Columbia, filed three notices in the district court purporting to remove aspects of an attorney-discipline proceeding pending before a hearing committee of the District of Columbia Board on Professional Responsibility. Clark cited the federal officer removal statute, 28 U.S.C. § 1442, as one basis for removal in all three notices. JA 1, 712, 777. Disciplinary Counsel moved to remand in each case, arguing that the district court lacked subject-matter jurisdiction. The district court agreed and granted the motions in an order issued June 8, 2023. JA 542-577. Clark noted his appeal on June 11, 2023. JA 578.

For the reasons described in the argument below (pp. 12-37), the district court lacked subject-matter jurisdiction because none of the three proceedings is a removable "civil action brought in a State court" under 28 U.S.C. § 1441(a), or a "civil action or criminal prosecution that [was] commenced in a State court" under 28 U.S.C. § 1442(a). The district court's jurisdiction was limited to its inherent jurisdiction to determine its own jurisdiction. *See*, *e.g.*, *United States v. United Mine Workers of Am.*, 330 U.S. 258, 291 (1947).

This Court has appellate jurisdiction under 28 U.S.C. § 1291 because the district court's order is a final decision of a district court of the United States. The general bar to appellate review of orders "remanding a case to the State court from which it was removed," 28 U.S.C. § 1447(d), does not apply because none of the three matters was removed from "a State court." For the same reason, Section 1447(d)'s exception for appeals of remand orders when the removal was based on the federal-officer removal statute is inapplicable.

# QUESTIONS PRESENTED

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction" may be removed to federal court. Under 28 U.S.C. § 1442(a), "[a] civil action or criminal prosecution that is commenced in a State court" against an officer of the United States for acts under color of such office may be removed to federal court.

Section 1442(d)(1) defines "civil action" and "criminal prosecution" to include "any proceeding . . . to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought"; if there is no basis for removal other than seeking a judicial order, "only that proceeding may be removed to the district court."

The questions presented are:

1.    Is an action filed with the D.C. Board on Professional Responsibility, seeking to impose discipline on a member of the D.C. Bar for violating the D.C. Rules of Professional Conduct, removable as either a "civil action brought in a State court" or "[a] civil action or criminal prosecution that is commenced in a State court"?

2.    If Disciplinary Counsel asks the D.C. Court of Appeals to enforce a subpoena in an attorney-discipline case, does the "any proceeding" language of 28

U.S.C. § 1442(d) authorize removal of either the disciplinary action itself or the subpoena-enforcement action?

3.     Does 28 U.S.C. § 530B, which subjects government attorneys to the disciplinary authority of "each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State," exempt government attorneys from discipline in the District of Columbia?

## STATUTES INVOLVED

Title 28 of the United States Code provides, in relevant part:

### § 530B - Ethical standards for attorneys for the Government

(a) An attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State.

(b) The Attorney General shall make and amend rules of the Department of Justice to assure compliance with this section.

(c) As used in this section, the term "attorney for the Government" includes any attorney described in section 77.2(a) of part 77 of title 28 of the Code of Federal Regulations and also includes any independent counsel, or employee of such a counsel, appointed under chapter 40.

\* \* \*

### § 1441. Removal of civil actions

(a) Generally. — Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

\* \* \*

### § 1442. Federal officers or agencies sued or prosecuted

(a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority

claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

\* \* \*

(b) A personal action commenced in any State court by an alien against any citizen of a State who is, or at the time the alleged action accrued was, a civil officer of the United States and is a nonresident of such State, wherein jurisdiction is obtained by the State court by personal service of process, may be removed by the defendant to the district court of the United States for the district and division in which the defendant was served with process.

\* \* \*

(d) In this section, the following definitions apply:

(1) The terms "civil action" and "criminal prosecution" include any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued. If removal is sought for a proceeding described in the previous sentence, and there is no other basis for removal, only that proceeding may be removed to the district court.

\* \* \*

(5) The term "State" includes the District of Columbia, United States territories and insular possessions, and Indian country (as defined in section 1151 of title 18).

(6) The term "State court" includes the Superior Court of the District of Columbia, a court of a United States territory or insular possession, and a tribal court.

\* \* \*

## § 1446. Procedure for removal of civil actions

(a) Generally. — A defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of

Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

(b) Requirements; Generally. — (1) The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

* * *

(3) Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

* * *

(g) Where the civil action or criminal prosecution that is removable under section 1442(a) is a proceeding in which a judicial order for testimony or documents is sought or issued or sought to be enforced, the 30-day requirement of subsection (b) of this section and paragraph (1) of section 1455(b) is satisfied if the person or entity desiring to remove the proceeding files the notice of removal not later than 30 days after receiving, through service, notice of any such proceeding.

* * *

## § 1451. Definitions

For purposes of this chapter—

(1) The term "State court" includes the Superior Court of the District of Columbia.

(2) The term "State" includes the District of Columbia.

\* \* \*

## § 1455. Procedure for removal of criminal prosecutions

(a) Notice of Removal. — A defendant or defendants desiring to remove any criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such prosecution is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

(b) Requirements. — (1) A notice of removal of a criminal prosecution shall be filed not later than 30 days after the arraignment in the State court, or at any time before trial, whichever is earlier, except that for good cause shown the United States district court may enter an order granting the defendant or defendants leave to file the notice at a later time.

\* \* \*

## A. Attorney discipline in the District of Columbia

In 1970, Congress reorganized the judicial authority in the District of Columbia to create a system of local courts with jurisdiction separate from that of the District's federal courts. *See* District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub. L. No. 91-358, 84 Stat. 475-668. The statute created the D.C. Court of Appeals, which Congress directed to "make such rules as it deems proper respecting the examination, qualification, and admission of persons to membership in its bar, and their censure, suspension and expulsion." *Id.*, 84 Stat. at 521. Congress gave the Court of Appeals authority to "censure, suspend from practice, or expel a member of its bar" for conviction of a crime or other misconduct. *Id.*

In the same act, Congress provided the federal courts in D.C. with their own disciplinary authority, permitting them to "censure, suspend, or expel an attorney from the practice *at their respective bars*" for specified conduct. *Id.* (emphasis added). Congress did not give the federal courts jurisdiction to censure or suspend attorneys from practice in the District of Columbia generally, from practice before the D.C. Court of Appeals, or from practice before the D.C. Superior Court. *See id.*

Acting pursuant to its congressional grant of authority, the D.C. Court of Appeals adopted rules to govern the qualification and admission of attorneys to the D.C. Bar, standards to govern the practice of law in the District, and rules to govern

disciplinary proceedings against members of the D.C. Bar. *See* D.C. Ct. App. R. 46 (admission to the bar); D.C. Bar R. II (qualification & admission); R. X (adopting the District of Columbia Rules of Professional Conduct); R. XI (attorney discipline). In D.C. Bar Rule XI, the court created the Board on Professional Responsibility, established the office of Disciplinary Counsel (formerly Bar Counsel), and specified the process by which disciplinary charges are brought against D.C. Bar members and ultimately resolved by the Court of Appeals. *See* D.C. Bar R. XI §§ 4 (Board on Professional Responsibility); 5 (Hearing Committees); 6 (Disciplinary Counsel); 8-9 (hearings and proceedings before the Board and the Court of Appeals).

Under those procedures, contested disciplinary cases are initiated by Disciplinary Counsel's filing of a petition and specification of charges with the Board. D.C. Bar R. XI § 8(c). The matter is then assigned to a hearing committee composed of two members of the Bar and one non-attorney member of the public. *Id.* §§ 5(a), 8(c). Following a trial-like hearing, the hearing committee issues a report containing its findings and recommendations. *Id.* § 9(a). If either the respondent or Disciplinary Counsel files exceptions to the report, the matter is briefed and argued before the Board, which is composed of seven attorneys and two members of the public. *Id.* §§ 4(a), 9(b). The Board "review[s] the findings and recommendations" of the hearing committee and issues a report containing its own findings and conclusions. *Id.* §§ 4(e)(7), 9(d). If Disciplinary Counsel or the respondent files exceptions to the

Board's report, the case moves to the Court of Appeals for another round of briefing and argument. *Id.* § 9(e), (h). In all cases, the ultimate decision to discipline an attorney rests with the Court of Appeals. *Id.* § 9(h).

**B.    The conduct at issue in the disciplinary action against Clark**

The charges at issue in the disciplinary action arise from Appellant Jeffrey Clark's conduct in late 2020 and early 2021, following the 2020 presidential election.[1] During that time, Clark held two offices in the United States Department of Justice: Assistant Attorney General for the Environment & Natural Resources Division and Acting Assistant General for the Civil Division.

On November 3, 2020, the Governor of Georgia certified the results of the 2020 election, identifying sixteen individuals pledged to President Joseph R. Biden who were appointed Electors of President and Vice President for the State of Georgia. A month later, former President Trump sued election officials in Fulton County, Georgia, seeking to nullify the results of the election. When the trial court declined to consider the case on an expedited basis, Trump sought to reverse that decision in the Supreme Court of Georgia, which denied certiorari on December 12, 2020.

---

[1] These events are described at length in the Senate Judiciary Committee's Majority Staff Report, *Subverting Justice: How the Former President and His Allies Pressured DOJ to Overturn the 2020 Election*, https://www.judiciary.senate.gov/imo/media/doc/Interim Staff Report FINAL.pdf.

Clark had no responsibility for the Department of Justice's investigation of allegations of fraud or irregularities in the 2020 election; those investigations were conducted by the Criminal Division and the Civil Rights Division and were supervised nationally by Principal Associate Deputy Attorney General Richard Donoghue, who reported directly to Acting Attorney General Jeffrey Rosen. Donoghue had informed Rosen that there was no evidence of election fraud or irregularity that could have potentially affected the outcome of the 2020 Presidential election.

In late December 2020, Clark presented Rosen and Donoghue with a letter addressed to various Georgia state officials, which urged the Governor and the legislature to convene a special session and send to Congress a separate slate of electors in addition to the certified electors pledged to Biden. This second set of electors, pledged to Trump, had not been elected in the 2020 election. The letter falsely stated that the Department "had identified significant concerns that may have impacted the outcome of the election" in Georgia. And though the Department had no involvement or interest in Trump's Fulton County litigation, the letter claimed that the Department found the pace and posture of that case "troubling." The letter said the Department had concluded the Governor should convene a special session of the Georgia legislature, and that if he did not, the legislature had the authority to do so on its own initiative. In fact, the Department had not made those determinations. Had

Clark's proposal to send a second set of electors been adopted, it would have thrown the outcome of a decided election into doubt.

Rosen and Donoghue informed Clark that they would not sign the letter because it contained false statements and could interfere with tabulating the electoral vote. Although they gave Clark the opportunity to learn about the results of the Department's investigations and the lack of foreign interference, Clark still insisted they send the letter, threatening that if they did not, the President would appoint him as Acting Attorney General and he would send it himself. The matter ultimately culminated with a meeting in the White House on January 3, 2021, when the prospect of multiple resignations convinced then-President Trump not to appoint Clark as Acting Attorney General, and the letter idea died.

Clark left federal service on January 14, 2021.

## C.  Procedural history

Disciplinary Counsel opened an investigation after receiving a letter describing Clark's conduct from Senator Dick Durbin, the Chair of the Senate Judiciary Committee. *See* No. 22-mc-96, Dkt. No. 1-57, JA 162-164. Disciplinary Counsel issued an investigative subpoena to Clark and, when he refused to comply, sought an order enforcing the subpoena from the D.C. Court of Appeals. *Id.*, Dkt. No. 1-62, JA 215-225. Five months later, with the motion still unresolved, Disciplinary Counsel formally brought charges against Clark by filing a specification of charges with

the Board. *Id.*, Dkt. No. 1-2, JA 40-48. Clark was served with the specification on July 22, 2022 and filed an answer Sept. 1, 2022. *Id.*, Dkt. No. 1-21, JA 103-132.

Following the charges, the D.C. Court of Appeals dismissed the investigative-subpoena enforcement matter as moot, reasoning that the investigative stage of the disciplinary matter had ended. No. 22-mc-96, Dkt. No. 1-45, JA 155-156. On October 6, 2022, Disciplinary Counsel issued a new subpoena, seeking much of the same information requested in the investigative subpoena for use at the hearing. No. 22-mc-117, Dkt. No. 1-7, JA 764-767. On October 17, 2022, three months after he was served with the specification, Clark filed a notice purporting to remove the disciplinary matter to the district court. No. 22-mc-96, Dkt. No. 1, JA 1. Disciplinary Counsel moved to remand, arguing that the district court lacked jurisdiction and the notice of removal was untimely. *Id.*, Dkt. No. 5, JA 431, 439.

Clark was no more inclined to comply with the new subpoena than he was the investigative subpoena, so Disciplinary Counsel sought an order enforcing the October subpoena in D.C. Court of Appeals. No. 22-mc-117, Dkt. No. 1-3, JA 745-759. Clark's second notice of removal purported to remove this subpoena-enforcement matter. *Id.*, Dkt. No. 1, JA 712. Disciplinary Counsel filed a second motion to remand. *Id.*, Dkt. No. 4, JA 768.

In December 2022, Disciplinary Counsel learned that Clark possessed relevant documents not covered by its prior subpoena and issued an additional subpoena

for those documents. No. 23-mc-7, Dkt. No. 1-7, JA 812-814. Although Disciplinary Counsel did not seek an order enforcing the subpoena, Clark soon filed a notice purporting to remove the subpoena on its own. *Id.*, Dkt. No. 1, JA 777. Disciplinary Counsel then filed a third motion to remand. *Id.*, Dkt. No. 4, JA 830.

The district court granted Disciplinary Counsel's three motions to remand, holding that it lacks jurisdiction to hear the disciplinary action and that the matter is not removable to federal court. No. 22-mc-96, Dkt. No. 20, JA 542-577 (June 8, 2023). Clark noted his appeal. *Id.*, Dkt. No. 21, JA 578.

The status of the three purportedly removed matters as of the date this brief is filed is as follows:

1.  The disciplinary matter itself has resumed before the hearing committee, which has scheduled a hearing to begin March 26, 2024.

2.  The D.C. Court of Appeals granted Disciplinary Counsel's motion to enforce the October 2022 subpoena on December 6, 2023. Clark produced some materials on December 18, but withheld others. Clark asked the Court of Appeals to rehear the order enforcing the subpoena; that petition remains pending.

3.  Clark produced the materials requested by Disciplinary Counsel's December 2022 subpoena on December 18, 2023. Disciplinary Counsel does not seek any further production pursuant to that subpoena.

## SUMMARY OF THE ARGUMENT

The question before the Court is whether Clark is entitled to have any aspect of the disciplinary action against him heard in federal district court. The Court may begin its analysis of that question from several places, but they all lead to the same destination: the disciplinary proceeding was not removable in whole, nor were any of its parts.

The first path begins from the removal statutes, which direct that a "civil action brought in a State court" may be removed if the district court would have original jurisdiction of the matter, 28 U.S.C. § 1441(a), and that a "civil action or criminal prosecution that is commenced in a State court" may be removed if it is against a federal officer for acts taken under color of his office. 28 U.S.C. § 1442(a). The disciplinary proceeding against Clark does not qualify under either statute because it is not a civil action or a criminal prosecution and it was not commenced "in a State court." Disciplinary actions are fundamentally unlike civil actions or criminal prosecutions: Disciplinary Counsel is not a private litigant and violating the Rules of Professional Conduct is not a crime. Attorney discipline does not exist to validate private rights or impose criminal penalties but rather to carry out the court's responsibility and duty to protect the public from unethical practices by attorneys the court itself has authorized to practice law.

Further, disciplinary actions in the District of Columbia are not "commenced in a State court." They are commenced before the Board on Professional Responsibility, which is not a court at all, and they proceed first to a hearing by a volunteer hearing committee and then to review by the Board before they ever come before a court. Even then, they are not reviewed by "a State court" under the removal statutes because by definition that term includes the District of Columbia Superior Court but not the District of Columbia Court of Appeals. 28 U.S.C. §§ 1442(d)(6), 1451(1). It does not matter that the statutes separately define "State" to include the District of Columbia, 28 U.S.C. §§ 1442(d)(5), 1451(2), because the more specific statutory definition of "State court" is controlling. *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012). Thus, even if the Board is sufficiently part of the Court of Appeals that disciplinary actions are commenced there, they still are not "commenced in a State court" under the removal statutes.

Clark tries to forge an alternate path through the removal statues, but it leads to the same place. Section 1442(d)(1) permits the removal of "any proceeding" against a federal officer in an action that is not *itself* a civil action or criminal prosecution "to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued." But that language does not, as Clark argues, mean that an action is removable in its entirety so long as a judicial order has been sought in the action. The statute makes clear that when there is no

other basis for removal (as there is none here), "only *that proceeding*"—the one in which a judicial order is sought—"may be removed." 28 U.S.C. § 1442(d)(1) (emphasis added). So the action itself did not become removable simply because Disciplinary Counsel sought to enforce a subpoena as part of it. The subpoena-enforcement part of the action did not become removable either: although Section 1442(d)(1) expands the definition of civil action or criminal prosecution, a proceeding must still be "commenced in a State court" to be removable. 28 U.S.C. § 1442(a). Here, enforcement was sought before the D.C. Court of Appeals, which is not a "State court" under Section 1442(d)(6). So ends the path of Section 1442(d)(1).

Nor would Clark make it further if the Court looked past the statutory barriers above. First, the disciplinary action was not against a "federal officer" because Clark left federal service long before the disciplinary charges were brought. As the Eleventh Circuit recently held, Section 1442(a) grants the right of removal to *current* federal officers; not *former* federal officers. *Georgia v. Meadows*, 88 F.4th 1331, 1338-1339 (2023). Second, Clark cannot show the acts at issue were taken under color of his office. He has fully litigated that issue and lost it in Georgia; he is collaterally estopped from relitigating it here. *Georgia v. Clark*, No. 1:23-cv-3721, 2023 WL 7012663 (N.D. Ga. Sept. 29, 2023); *see Martin v. Dep't of Justice*, 488 F.3d 446, 455 (D.C. Cir. 2007). Third, Clark's initial notice of removal was untimely and

Disciplinary Counsel's motion to remand timely objected to it. Even overlooking all the other obstacles, the matter was properly remanded.

Lastly, the Court could take a shortcut and ask whether Congress has directly addressed the overarching question. It has. In the McDade Amendment, 28 U.S.C. § 530B, Congress set to rest the argument that attorneys for the government are exempt from the disciplinary rules where they perform their duties or are entitled to any special forum for disciplinary actions. They are not. Congress directed they be subject to the *same* disciplinary rules as other attorneys, enforced in the *same* manner. *Id.* § 530B(a). Permitting disciplinary actions against government attorneys to be removed would directly contravene Congress's direction.

Clark halfheartedly argues that by referring to "State laws and rules" and the "State[s]" where government attorney engages in their duties, Congress meant to silently exempt government attorneys who work in the District of Columbia from the statute and moreover preempt any attempt to discipline them at all. Nothing supports that outlandish theory; Congress intended to set the same rule for all government attorneys.

## STANDARD OF REVIEW

The district court's determination that it lacked subject matter and removal jurisdiction is reviewed de novo. *Dist. of Columbia v. Exxon Mobil Corp.*, 89 F.4th 144, 148 (D.C. Cir. 2023).

# ARGUMENT

## I. NONE OF THE THREE MATTERS WAS REMOVABLE UNDER THE TEXT OF THE REMOVAL STATUTES.

The right to remove a case from state court to federal court is "purely statutory." 14C Wright & Miller, Fed. Prac. & Proc. Juris. § 3721 (Rev. 4th ed.). The scope of removal "and the terms of its availability . . . are entirely dependent on acts of Congress." *Id.* Accordingly, if there is no statutory basis to remove a given matter, the matter cannot be removed to federal court. Under the plain language of the removal statutes, removal is limited to "civil actions" that are commenced "in State court," and "civil actions or criminal prosecutions" against federal officers which are initiated in "State court." 28 U.S.C. §§ 1441(a), 1442(a).

This case involves the purported removal of (1) a disciplinary proceeding brought before the D.C. Board on Professional Responsibility; (2) a motion requesting that the D.C. Court of Appeals enforce a disciplinary subpoena; and (3) a subpoena issued by Disciplinary Counsel for which enforcement was never sought. None of those matters was removable because none of them was a civil action or criminal prosecution initiated "in a State court."

### A. The nature of attorney-discipline proceedings.

Disciplinary proceedings occupy a unique position within our system of justice. They do not exist to enforce the rights of private individuals or to punish criminal behavior, but rather to fulfil a court's inherent power and duty to protect the

public from the unethical practice of law by members of its bar. Disciplinary charges may be brought only against those who have agreed, by becoming members of the bar, to be bound by the Rules of Professional Conduct and to submit themselves to the disciplinary process. The consequences of such proceedings extend only to what attorneys receive as a result of their agreement: the privilege to practice law. The sanctions available in disciplinary matters—reprimands, suspension, and disbarment—only affect and are only meaningful within the exclusive authority that courts possess to regulate the practice of law by those who appear before them. They do not include remedies such as damages, fines, or imprisonment, which are traditionally available in civil actions or criminal prosecutions.

**B.   Attorney discipline matters are not "civil actions."**

A "civil action" is defined as: "An action brought to enforce, redress, or protect a private or civil right." Black's Law Dictionary 36 (10th ed. 2014). Under Federal Rule of Civil Procedure 2 the term "civil action" encompasses what were previously denoted "actions at law" and "suits in equity." Fed. R. Civ. P. 2 & 1937 Adv. Comm. n.2. By their nature, disciplinary matters do not fit those categories.

Disciplinary Counsel does not have a private right to an order reprimanding, suspending, or disbarring an attorney, and could not bring an original suit for that relief in federal district court or in the courts of D.C. Instead, Disciplinary Counsel's authority exists only because Congress authorized the Court of Appeals to

implement rules for disciplining the members of its bar and because in following Congress's direction, the Court promulgated the rules of the D.C. Bar, which created the office of Disciplinary Counsel and authorized it to bring such proceedings. *See* 84 Stat. at 521; D.C. Bar R. XI. As the district court held, disciplinary matters do not bear "the essential hallmarks of a civil case"; they involve "no private injury" and are not of a character traditionally cognizable in equity. D.Ct. Op. 14, JA 555 (internal quotation marks omitted). It is therefore no surprise that other federal courts have found disciplinary matters are not "civil actions" under the removal statute. *See id.* at 14-15, JA 555-556 (collecting cases).

Clark does not seriously attempt to show that the disciplinary proceeding amounts to a "civil action."[2] Instead, he argues that by describing disciplinary matters as "quasi-criminal," the D.C. Court of Appeals necessarily held they are "in-part civil and in part criminal actions." Br. 26 (quoting *In re Artis*, 883 A.2d 85, 101 (2005)). As a matter of logic, that does not follow, and *Artis* establishes no such thing.

The removal statutes authorize the removal of "any civil action" initiated in state court when the district court would have original jurisdiction of the action (28

---

[2] Clark promises to do so in Part III of his argument, *see* Br. 30 n.15, but in that section he simply denies conceding that disciplinary proceedings are *not* "civil actions," asserts that it does not matter if they weren't, and moves on to an argument about 28 U.S.C. § 530B. Br. 46-47, 47-50.

U.S.C. § 1441(a)), or when it is initiated against an officer of the United States (28 U.S.C. § 1442(a) & (a)(1)). They do not authorize the removal of matters that are *not* civil actions simply because they have been described as "quasi-criminal."

Nor does *Artis* suggest otherwise. To the contrary, the court's opinion discusses disciplinary proceedings as separate from "other contested cases," noting that Disciplinary Counsel does not have the same right to discovery as a litigant in a civil case and that respondents are entitled to procedural safeguards "analogous to" other cases. 883 A.2d at 100; *see also id.* at 101-102 (contrasting "the liberal rules of discovery applicable in civil proceedings"). The court's description of disciplinary matters as "quasi-criminal" simply applied its longstanding holding that as "adversary, adjudicatory proceedings," respondents are entitled to due process safeguards analogous to those in other such proceedings. *In re Thorup*, 432 A.2d 1221, 1225 (D.C. 1981). That holding does not mean a disciplinary matter is either a "civil action," a "criminal prosecution," or—somehow—both.

Clark's attempt to distinguish the cases holding otherwise (Br. 30-32) relies entirely on his flawed interpretation of the "any proceeding" language of 28 U.S.C. § 1442(d)(1), discussed in part I.E, below. He relies on that same language to prop up the one case that has ever permitted removal of a disciplinary action because it was instituted against a federal officer, *Kolibash v. Committee on Legal Ethics of W.V. Bar*, 872 F.2d 571 (4th Cir. 1989), though that decision came long before the

"any proceeding" language became part of the federal officer removal statute. *See* Br. 35.

The reasoning of *Kolibash* itself has little to commend it. The court rejected the argument that the disciplinary proceeding in question was not a "civil action or criminal prosecution commenced in a State court" on the theory that applying the plain text of the statute was too "narrow a reading of the removal provision." 872 F.2d at 576. That reasoning speaks for itself. "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Their jurisdiction may not be "expanded by judicial decree" beyond the bounds that Congress has set. *Id.* Section 1442(a) permits the removal of civil actions and criminal prosecutions commenced in a State court. It does not permit removal when a proceeding does not meet those requirements. Moreover, *Kolibash* predates Congress's determination that attorneys for the federal government should be subject to discipline where they perform their duties in the same manner as other attorneys. 28 U.S.C. § 530B(a); *see* part III, *infra*.

## C. Disciplinary matters are not "criminal prosecutions."

For similar reasons, the disciplinary matter against Clark cannot be removed as a "criminal prosecution . . . commenced in a State court" against an officer of the United States. 28 U.S.C. § 1442(a). The Rules of Professional Conduct are not criminal laws, their violation is not a crime, and attorneys cannot be sent to prison or

fined for violating them. The D.C. Court of Appeals has thus stated plainly that "Bar disciplinary proceedings 'are not criminal prosecutions in any sense.'" *In re Blackwell*, 299 A.3d 561, 570 n.3 (2023) (quoting *Brookens v. United States*, 182 A.3d 123, 133 n.17 (D.C. 2018)). The court has similarly held that "[a] disciplinary sanction differs from a criminal conviction," *In re Williams*, 513 A.2d 793, 796 (1986), and regularly notes that the purpose of disciplinary sanctions is not "to punish the attorney," but rather "to serve the public and professional interests identified and to deter future and similar conduct." *In re Cleaver-Bascombe*, 986 A.2d 1191, 1195 (2010).

In the face of such clear statements, Clark's argument that the phrase "quasi-criminal" means that a disciplinary matter is removable as a "criminal prosecution" cannot stand. Even if the decision in *Artis* could support such an argument, the court has definitively settled the matter by stating that disciplinary matters "are not criminal prosecutions in any sense." *Blackwell*, 299 A.3d at 570 n.3.

### D. The disciplinary action was not commenced "in a State court."

Both the general removal statute and the federal officer removal statute authorize removal only of cases that are initiated "in a State court." 28 U.S.C. §§ 1441(a), 1442(a). In addition to not being removable as a "civil action" under Section 1441(a) or a "civil action or criminal prosecution" under Section 1442(a),

the disciplinary matter against Clark was not removable because it was not commenced "in a State court."

In the District of Columbia, disciplinary matters are not initiated in a court at all. They are initiated by filing a specification of charges with the Board on Professional Responsibility, which is not a court. It comprises nine volunteer members appointed by the Court of Appeals: seven lawyers, two non-lawyer members of the public, and zero judges. D.C. Bar R. XI § 4(a). Disciplinary matters therefore are not removable because they are not proceedings commenced in a court, much less "in a State court," as the removal statutes require.

Clark argues, however, that disciplinary matters qualify as "commenced in a State court" because the Board of Professional Responsibility is "part of" the D.C. Court of Appeals, and the federal-officer removal statute defines "State" to include the District. Br. 26 & n.11, 49. That is incorrect.

It is true that the removal statutes define the term "State" to include the District of Columbia, both for the general purposes of removal, 28 U.S.C. § 1451(2), and specifically for federal-officer removal, 28 U.S.C. § 1442(d)(5). Standing alone, those definitions might suggest that the term "State court" includes the D.C. Court of Appeals: Congress created two separate courts in the District of Columbia: "(A) The District of Columbia Court of Appeals" and "(B) The Superior Court of the

District of Columbia." D.C. Code § 11-101. If D.C. counts as a "State," then the D.C. Court of Appeals would seem to count as a "State court."

But the definition of "State" does not stand alone; both statutes also define the more specific term "State court" to *exclude* the D.C. Court of Appeals. *Id.* §§ 1442(d)(6), 1451(1). In both statutes, "State court" includes just one of the two D.C. courts: the Superior Court; neither defines the term to include the D.C. Court of Appeals. *See id.* The omission of the Court of Appeals was no accident. In the legislation that created the D.C. court system, Congress specified that "[a] civil action or criminal prosecution *in the Superior Court of the District of Columbia* is removable to the United States District Court for the District of Columbia in accordance with [28 U.SC. § 1441, *et seq*.]." D.C. Code § 11-503; 84 Stat. 473, 478 (emphasis added). Congress did not provide any parallel provision permitting removal from the D.C. Court of Appeals. *See* D.C. Code § 11-2501–2504. The parallel language of the removal statutes is therefore not surprising: Congress intended to permit removal from the Superior Court and said so twice; it did not intend removal from the Court of Appeals and therefore did not provide for such removal at all.

This reading does not render the separate definition of "State" mere surplusage; that definition has its own work to do. Section 1442(b), for example, permits removal of certain actions against a federal officer who is a "citizen of a State" but "a nonresident of such State." Defining "State" to include the District ensures that

provision applies to non-resident citizens of D.C. *See also* 28 U.S.C. § 1441(b)(2) (prohibiting the removal of actions in which a defendant "is a citizen of the State in which such action is brought").

If there is any remaining doubt that "State court" does not include the D.C. Court of Appeals, it is resolved by the "old and familiar rule" that "the specific governs the general." *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992)). The statute specifically defines "State court"; that definition cannot be overridden by adding a general definition of "court" to the general definition of "State." Thus, even if the Board on Professional Responsibility is considered part of the D.C. Court of Appeals, the disciplinary matter against Clark was not "commenced in a State court."

### E.   Section 1442(d) does not make "any proceeding" removable.

Beyond his conclusory argument that the D.C. Court of Appeals transformed disciplinary matters into civil actions or criminal prosecutions by describing them as "quasi-criminal," Clark places almost all of his chips on 28 U.S.C. § 1442(d)(1), a provision of the federal officer removal statute which states:

> The terms "civil action" and "criminal prosecution" include any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued. If removal is sought for a proceeding described in the previous sentence, and there is no other basis for removal, only that proceeding may be removed to the district court.

28 U.S.C. § 1442(d)(1). Clark especially loves the words "any proceeding" in this section. Beginning with the fourth page of his argument, Clark relies on that language as his answer to nearly every aspect of the district court's decision, referring to it directly or indirectly on all but one of the ensuing ten pages. *See* Br. 27-37. He then launches a ten-page, Roman-numeral-level argument devoted to that same section, again leaning on the words "any proceeding." *See id.* at 37-46. For good measure, Clark then relies on the "any proceeding" language in both enumerated points of argument in the final section of his brief. *See id.* at 47-50.

Clark's argument boils down to this: Section 1442(d)(1) uses the words "any proceeding" and this disciplinary action is a "proceeding." QED, it is removable. Clark Br. 27-28 (arguing that "any" means "any"); 38 (arguing that a disciplinary action is a proceeding). He argues this reading is confirmed by Section 1442(d)(1)'s mention of subpoenas and subpoena enforcement because there were subpoenas in this case, Disciplinary Counsel sought to enforce one of them, and Clark purported to remove them. *Id.* at 39. Finally, he argues that the last sentence of Section 1442(d)(1) justifies not only the removal of the subpoena-enforcement aspect of an otherwise nonremovable action, but in fact the entire action. *Id.* at 39-40. "For a host of reasons," he concludes, "the text of Section 1442(d)(1) could not be clearer." *Id.* at 41. Clark relies on this supposedly plain meaning of Section 1442(d)(1) throughout his brief. *E.g.*, *id.* at 28, 29, 31, 32, 34, 35, 36.

Clark's argument deploys a few words and phrases from Section 1442(d)(1) as if they were untethered from one another and amenable to any construction his imagination might fancy, ignoring the text of Section 1442(d)(1) as it is actually written. To recall, the statute defines the terms "civil action" and "criminal prosecution" for the purposes of Section 1442 to "include any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued." 28 U.S.C. § 1442(d)(1). By its plain terms, that language makes certain proceedings qualify as "[a] civil action or criminal prosecution" under Section 1442(a) that otherwise would not qualify on their own. But the statute does not, as Clark contends, make "any proceeding" removable, "full stop," Br. 28, nor does it capture every manner of action on a "spectrum" between civil actions and criminal prosecutions. Br. 34. Two statutory qualifications preclude that reading.

First, such a proceeding is only removable "*to the extent that*" a judicial order is sought or issued in the proceeding. 28 U.S.C. § 1442(d)(1) (emphasis added). If there is any question about what "to the extent that" means, the statute makes clear that when a proceeding is removable only because a such a judicial order has been sought or issued "*only that proceeding* may be removed to the district court." *Id.* (emphasis added). Thus, in an otherwise nonremovable action, a judicial order seeking to enforce a subpoena against a federal officer may be removable as a "civil

action or criminal prosecution" under Section 1442(d)(1), but if so, only the sub-poena-enforcement aspect of that action is removable; not the action itself.

This reading is confirmed by 28 U.S.C. § 1446(g), which specifies the time for removal of subpoena-enforcement proceedings described in Section 1442(d). The separate time limit is necessary because the time for removal of a "civil action" under Section 1446(b) (within 30 days of receiving an "initial pleading setting forth the claim for relief") and a "criminal prosecution" under Section 1455(b) (within 30 days after the arraignment) cannot sensibly be applied to an ancillary proceeding which is not initiated by a claim for relief or an arraignment. For example, in a state criminal action, an effort by the defendant to subpoena a federal law enforcement agent to testify at trial as to whether a witness is a federal informant will almost never occur within 30 days of arraignment. If the 30-day bar were applied, these ancillary proceedings could virtually never be removed. But if the issue of whether a federal agent should be compelled to testify in a state trial is removed, only that issue is removed; the federal courts do not assume jurisdiction to conduct a state criminal trial because there is an issue whether a federal officer can be compelled to testify.

Second, while Section 1442(d)(1) expands the definition of "civil action or criminal prosecution" to include matters that would not otherwise qualify, it does not alter the basic requirement of Section 1442(a) that limits removal to actions that

are "commenced in a State court." A proceeding seeking a judicial order against a federal officer is therefore not removable if that proceeding is not commenced in a "State court" as that term is defined in Section 1442(d)(6).

Here, none of Clark's three purported removals is authorized by Section 1442(d)(1). The disciplinary action itself—Clark's first purported removal—was not removable for all of the reasons described above. Although Disciplinary Counsel did seek a judicial order to enforce a subpoena—the subject of Clark's second notice of removal—Section 1442(d)(1) did not make the entire matter removable because the subpoena-enforcement action could only make "that proceeding" removable. Clark's contrary argument that the "whole action" was removable (Br. 39-40) is circular at best. He says the last sentence of Section 1442(d)(1) shows that subpoena-enforcement matters may be separately removed, but the whole matter was removable here because, it appears, he in fact attempted to remove it. *Id.* The statute does not support that nonsensical reading.

Nor did Section 1442(d)(1) authorize removal of the subpoena-enforcement matter on its own. Disciplinary Counsel agrees that it sought a "judicial order" enforcing the subpoena from the Court of Appeals and that aspect of the proceeding may therefore be considered a "civil action or criminal prosecution" for purposes of Section 1442(a). But again, Section 1442(a) authorizes only the removal of such actions that are "commenced in a State court," and the statute specifically defines

"State court" to include D.C. Superior Court; not the Court of Appeals. 28 U.S.C. § 1442(d)(6); *see supra* part I.D. Thus, the subpoena-enforcement action was not removable because Disciplinary Counsel sought to enforce the subpoena in the Court of Appeals; it was not "commenced in a State court."

Finally, there is no plausible argument that Section 1442(d)(1) authorized Clark's third purported removal—of the subpoena Disciplinary Counsel did not seek to enforce. That matter was not itself a civil action or criminal prosecution commenced in state court, Disciplinary Counsel did not seek a judicial order to enforce it, and Clark has since complied with the subpoena, ending any potential controversy and rendering the question of its removability moot.

## F. The list of nonremovable actions in 28 U.S.C. § 1445 is immaterial.

Clark argues that because the list of nonremovable actions contained in 28 U.S.C. § 1445 does not include disciplinary proceedings, the court may not expand that list by finding that such proceedings are not removable. Br. 32-33, 36, 47. That is incorrect.

Section 1445 lists four types of actions which may not be removed. 28 U.S.C. § 1445(a)–(d). All four are described as "A civil action in any State court." *Id.* That language makes clear that the list is intended to prohibit the removal of certain civil actions that would otherwise be removable. Section 1445 does not attempt to enumerate the endless list of disputes that are not removable because they are not civil

25

actions or criminal prosecutions commenced in state court. Congress had no reason to specify that matters such as disciplinary complaints, foreign lawsuits, and playground fights are not removable—they are already excluded by the text of Sections 1441(a) and 1442(a). Recognizing that reality would not improperly add to the list of nonremovable actions.

### G. Disciplinary actions are incompatible with removal.

In addition to all the reasons described above, it is worth noting that by their nature, disciplinary proceedings are unsuitable for adjudication before a federal district court. The D.C. Court of Appeals has exercised the authority granted by Congress to regulate the practice of law in D.C. by establishing specific procedures for the conduct of disciplinary actions. Those procedures include a hearing before a hearing committee composed of two bar members and one non-attorney member of the public; the opportunity to take exception to the hearing committee's findings through review by the Board on Responsibility; and a second level of review by the D.C. Court of Appeals. With few minor exceptions, the Court of Appeals is the only body authorized to impose discipline on members of the D.C. Bar.

There is no way to apply the procedures adopted by the Court of Appeals in district court. To begin, the district court is a federal court established under Article III of the Constitution; it is not a hearing committee composed of two members of the D.C. Bar and one member of the public. Although it has authority to exercise the

judicial power of the United States, including the authority to discipline attorneys admitted to practice before it, the district court has no authority to suspend or disbar an attorney from practicing in the District of Columbia generally or before the D.C. Court of Appeals. That authority rests exclusively with the Court of Appeals. And unlike a hearing committee, there is no mechanism by which the district court could recommend that the D.C. Court of Appeals impose a given sanction for violation of the Rules of Professional Conduct. A district court decision cannot be reviewed by the Board or ultimately implemented by the Court of Appeals, and the district court has no authority to order the Court of Appeals to take a given action. The primary mechanism for review of a district court decision is an appeal to this Court, which also lacks the authority to impose any condition or sanction on attorneys' license to practice law in the District of Columbia. In short, permitting removal of a disciplinary action would place the controversy before a court that cannot employ the established procedures for resolving that controversy and which is powerless to decide it.

II.    **CLARK IS NOT A FEDERAL OFFICER, CANNOT SHOW THE ACTS WERE TAKEN UNDER COLOR OF HIS FORMER FEDERAL OFFICE, AND HIS NOTICE OF REMOVAL WAS UNTIMELY.**

    A.    **Actions against former federal officers are not removable.**

As shown above, the district court lacked jurisdiction because there was no statutory basis to remove the disciplinary proceedings against Clark. But even if

disciplinary proceedings were otherwise removable, Clark's attempt to use the federal officer removal statute would fail because he is no longer a federal officer.[3]

To remove an action under Section 1442(a), a defendant must show that he is a federal officer, the conduct underlying the suit was performed under color of federal office, and he has a "colorable" federal defense. *Georgia v. Meadows*, 88 F.4th 1331, 1338 (11th Cir. 2023). As the Eleventh Circuit recently held, Section 1442(a) grants the right of removal to *current* federal officers; not *former* federal officers. *Id.* Thus, Clark cannot satisfy the first requirement of Section 1442(a)(a) because he did not hold any federal office when he sought to remove the proceedings. Clark's argument that the underlying conduct occurred when he "was" an officer of the United States (Br. 37) is not enough.

By its plain terms, Section 1442(a)(1) provides the right of removal to "any officer (or any person acting under that officer) of the United States." It does not extend the right to *former* officers, and the ordinary meaning of "officer" does not include former officers. As the Eleventh Circuit has explained, the ordinary meaning of "officer" refers to a person authorized to perform the duties of a given office; it does not refer to someone who had such authorization in the past but no longer does.

---

[3] Although the district court did not rule on this issue, the Court may affirm on any ground that appears in the record. *E.g.*, *Chambers v. Burwell*, 824 F.3d 141, 143 (D.C. Cir. 2016).

*United States v. Pate*, 84 F.4th 1196, 1201 (2023) (collecting legal and English dictionary definitions). Thus, it would be odd to describe federal judge who formerly served in state government "as an 'officer' of the *state* she used to serve." *Id.* Because Section 1442(a)(1) refers only to an "officer of the United States"; it does not extend to a *former* officer of the United States.

The "whole text of section 1442 reinforces the ordinary meaning of subsection (a)(1)." *Meadows*, 88 F.4th at 1339. For example, unlike subsection (a)(1), Section 1442(b) "expressly provides for removal of actions commenced against a former officer." *Id.* Section 1442(b) permits removal by a person "who is, *or at the time the alleged action accrued was*, a civil officer of the United States." (Emphasis added). That variation in language shows that Congress intended a difference in meaning: when Congress includes "particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally." *Russello v. United States*, 464 U.S. 16, 23 (1983) (cleaned up). The inference is particularly strong here because the two sections are in close proximity and address the same subject matter. *Meadows*, 88 F.4th at 1339.

That conclusion is reinforced by Section 1442(a)(1)'s use of the present tense to extend the right of removal to "any person *acting* under" an officer of the United States. (Emphasis added). The statute does not permit removal by a person acting under a former officer, a person who formerly acted under a current officer, or a

person who formerly acted under a former officer. Although Congress could have included those individuals, it did not, and unlike Section 1442(b), nothing in the text suggests that it intended to do so.

Nor does the statute's reference to "any act under color of such office" justify permitting removal by former officers for acts that happened when they were an officer. This language limits the removal of cases against current federal officers to matters relating to their official acts. It does not permit removal of garden variety civil actions against current federal officers, unrelated to official acts. For example, a federal officer may not remove a civil suit seeking to foreclose on his mortgage because it does not involve any acts under color of "such office"—that is, the office he currently holds. That limitation is independent of whether a person qualifies as an "officer of the United States." *See id.* But this limiting condition cannot be stretched to authorize removal of cases involving official acts once the actor is no longer a federal officer. Clark's claim that the disciplinary complaint involves acts under color of a federal office that he once held does not mean he was a federal officer when he sought to remove the action.

**B. Clark cannot show his acts were taken under color of his former federal office.**

Although Clark argues that Disciplinary Counsel has not contested whether he was acting under the color of his office, (Br. 25), Clark is collaterally estopped from litigating that issue here because he has "actually litigated" and lost the issue

in his attempt to remove the criminal case against him in Georgia. *Martin v. Dep't of Justice*, 488 F.3d 446, 455 (D.C. Cir. 2007); *see Georgia v. Clark*, No. 1:23-cv-3721, 2023 WL 7012663, at *3 (N.D. Ga. Sept. 29, 2023). There, the district court found that Clark could not establish the acts at issue here were taken under color of the federal office he once held. *Id.* The court rejected Clark's arguments "that his role as [Assistant Attorney General] for the Civil Division permitted him to write this letter within the scope of his office" and alternatively that he was not limited to working under a particular division within the Department of Justice and could be assigned to work any division. *Id.* at *6

After holding a hearing, reviewing Department of Justice regulations and manuals, considering the testimony of Rosen and Donoghue, and accepting other evidence adduced by Clark and the state, the court concluded that Clark had failed to show he was acting within the scope of his duties as a federal officer when he drafted and advocated for sending the letter to Georgia officials. *Id.* at *6-*8. While crediting Clark's theory that he *could have* been assigned to write the letter, it found no evidence that such authorization actually happened, and moreover that the subject matter of the letter did not fall within the Department of Justice's authority. *Id.* at *8-*9. "Not only has Clark failed to provide any (let alone sufficient) evidence that the President delegated him this authority, but the evidence shows that any such delegation of the action alleged (*i.e.*, the contents in the letter drafted) would have

been outside the scope of DOJ more broadly." *Id.* at *9 (footnote omitted). The court concluded that "Clark has failed to offer sufficient evidence that the acts alleged in the Indictment related to the color of his office." *Id.* Because the issue was "actually litigated" and the court's ruling on it was necessary for its final decision denying removal, Clark is estopped from relitigating this issue here. *Martin*, 488 F.3d at 455.

### C. Clark's notice of removal was not timely filed.

Even if, contrary to all the reasons above, the disciplinary proceeding could be removed and Clark was entitled to remove it, the district court properly remanded because Clark did not timely file his notice of removal. Clark was served with the specification of charges on July 22, 2022. No. 22-mc-96, Dkt. No. 1, JA 6. If that action was removable as a civil action or criminal prosecution, Clark's notice of removal was due within 30 days after he was served with the initial pleading or within 30 days after he was arraigned, respectively. 28 U.S.C. §§ 1446(a), 1455(b). But Clark did not file his notice of removal until October 17, 2022, three months after charges were formally lodged and he was served with the specification. No. 22-mc-96, Dkt. No. 1, JA 1. Disciplinary Counsel objected to the removal, in part, because it was not timely. *Id.*, Dkt. No. 5, JA 438-441.

The time limits for removal are mandatory, and a timely objection to a late petition will defeat removal. 14C Wright & Miller, Fed. Prac. & Proc. Juris. § 3731 (Rev. 4th ed.); *Fristoe v. Reynolds Metals Co.*, 615 F.2d 1209, 1212 (9th Cir. 1980).

Had the matter been capable of removal, Clark's untimely notice and Disciplinary Counsel's timely objection required the district court to remand.

## III. THE MCDADE AMENDMENT CONFIRMS THAT FEDERAL ATTORNEYS ARE SUBJECT TO DISCIPLINE WHERE THEY ENGAGE IN THEIR DUTIES.

The McDade Amendment, 28 U.S.C. § 530B(a), provides:

"An attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State."

This statute resolved a long-simmering controversy in which the Department of Justice had claimed its lawyers were immune from state discipline for conduct in the course of their official duties. *See* D.Ct. Op. 4-8, JA 545-549. The courts had roundly rejected that argument in cases such as *United States v. Ferrara*, 847 F. Supp. 964, 969 (D.D.C. 1993), and *In re Doe*, 801 F. Supp. 478, 486-487 (D.N.M. 1992), but the McDade Amendment definitively settled the issue. In plain terms, Congress declared that attorneys for the government are subject to the same disciplinary rules and proceedings as other attorneys.

As explained above, there was no statutory basis to remove disciplinary proceeding against Clark, he was not entitled to removal even if there were, and the district court lacked authority to adjudicate the matter in any case. But even setting all that aside, the McDade Amendment on its own answers Clark's central

contention that attorneys for the federal government are due a special federal forum to adjudicate whether they should be subject to discipline. Congress decided that they are not. Having declared government attorneys are subject to state disciplinary rules "to the same extent *and in the same manner*" as other attorneys, Congress could not possibly have intended that disciplinary actions against those very attorneys should be decided in a *different* manner by permitting removal to federal court.

Clark's only answer is to claim that Congress silently imposed the opposite rule for government attorneys who work in the District of Columbia by failing to specifically mention the District in Section 530B(a). He relegates this argument to the third issue in his brief: whether the district court correctly rejected his argument that 28 U.S.C. § 530B completely preempts the D.C. Court of Appeals from regulating the conduct of D.C. Bar members who work for the federal government. Br. 6.

Clark devotes a single sentence in his summary of the argument to that issue (Br. 23-24) and does not address it at all in the main argument section of his brief. The argument appears to be that when Congress passed Section 530B to ensure that government attorneys are subject to the disciplinary rules and authority of the jurisdiction where they work, it used the word "State" to include only those government attorneys who work in actual states, necessarily excluding the many attorneys who work in the District of Columbia. Further, the failure to specifically say that government attorneys in D.C. are subject to discipline in D.C. in the same way that

government attorneys who work in States are subject to discipline in those states means that Congress meant to occupy the field of attorney discipline for D.C. attorneys, preempting their regulation by the D.C. Court of Appeals and replacing it with, well, nothing. According to Clark, this makes the discipline of government attorneys in D.C. a federal matter, justifying federal question jurisdiction under 28 U.S.C. § 1331, and granting the district court original jurisdiction to hear disciplinary matters under 28 U.S.C. § 1441. Br. 4. As a result, Clark concludes that government attorneys who work in D.C. are not subject to D.C.'s attorney-discipline apparatus at all.

That argument is full of holes. First, complete preemption applies only when Congress has so clearly occupied the field that a state cause of action is necessarily a federal matter. *Dist. of Columbia v. Exxon Mobil Corp.*, 89 F.4th 144, 150 (D.C. Cir. 2023). The Supreme Court has found complete preemption in only three instances, "in each case a statute 'clearly manifested' that federal law wholly displaced state law." *Id.* Section 530B does not even come close. Far from clearly manifesting an intent to make attorney discipline for government lawyers a matter of federal law, it expressly does the opposite by ensuring that government lawyers are subject to the disciplinary authority of the jurisdiction where they practice. As the district court explained, Section 530B was passed specifically in response to the Department of Justice's attempt to exempt itself from certain ethics rules. D.Ct. Op. 5-6, JA 545-

546. Even supposing that D.C. was intentionally omitted, there is no reason to think Congress intended to enact for D.C. lawyers a version of the very exemption it otherwise rejected.

Further, Clark's argument that Section 530B's use of the word "State" necessarily excludes D.C. is contrary to the "longstanding legal tradition of interpreting 'State' in various federal statutes as encompassing the District of Columbia." *Wasserman v. Rodacker*, 557 F.3d 635, 639 (D.C. Cir. 2009). The Supreme Court has considered the District to be included in statutes "when that interpretation reflects Congress's intent." *Id.* (collecting cases). Here, the intent to include government attorneys working in D.C. in Section 530B is readily apparent, as the district court explained. Not only does Section 530B(c) define "attorney for the Government" by reference to a regulation that includes numerous officials who work in D.C., the sheer number of attorneys who work for the federal government in D.C.—more than any other jurisdiction—suggests that Congress intended them to be covered. In addition, the legislation was amended before its enactment to ensure that appointed independent counsel would be covered, a concern tied to the activities of Kenneth Starr, who operated from the District. D.Ct. Op. 5-6, 24-26, JA 545-546, 565-567. It would be absurd to conclude that Congress nevertheless intended to exclude D.C.

attorneys, let alone exempt them from discipline.[4] Disciplinary actions against attorneys for the federal government are regularly handled within D.C.'s disciplinary system without objection from the Department of Justice or the attorneys themselves. *E.g.*, *In re Dobbie*, 305 A.3d 780 (D.C. 2023); *In re Kline*, 113 A.3d 202 (D.C. 2015).

Lastly, Clark's complete-preemption-through-silence argument conflicts with other federal laws. Congress expressly granted the D.C. Court of Appeals authority to discipline attorneys admitted to the D.C. Bar and has continually required Department of Justice lawyers be licensed to practice law by a State, territory, or the District of Columbia. D.C. Code §§ 11-2501 to 11-2503; *see* D.Ct. Op. 6-7, JA 547-548 (listing appropriation acts). Given those circumstances, it is not plausible that Congress meant not only to exclude government lawyers in D.C. from local regulation, but to exempt them completely from attorney discipline.

## CONCLUSION

The district court's finding that it lacked jurisdiction over any of the purportedly removed matters should be affirmed.

---

[4] The same argument does not mean the D.C. Court of Appeals is a "State court" under the removal statutes. There, Congress manifested its intent to include D.C. as "State" and the Superior Court as a "State court" directly, by saying so in the statute. 28 U.S.C. §§ 1442(d)(5)-(6) & 1451(1)-(2).

Respectfully submitted,

HAMILTON P. FOX, III
    *Disciplinary Counsel*

JULIA L. PORTER
    *Deputy Disciplinary Counsel*

March 27, 2024

s/Theodore (Jack) Metzler
THEODORE (JACK) METZLER
    *Senior Assistant Disciplinary Counsel*
OFFICE OF DISCIPLINARY COUNSEL
515 5th Street, N.W.
Building A, Room 117
Washington, D.C. 20001
(202) 454-1746
metzlerj@dcodc.org

# CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) in that it contains 9,196 words, excluding the items listed in Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule 32(e)(1). I am relying on the word-count function of Microsoft Word.

March 27, 2024

s/Theodore (Jack) Metzler
Theodore (Jack) Metzler
*Senior Assistant Disciplinary Counsel*
OFFICE OF DISCIPLINARY COUNSEL
515 5th Street, N.W.
Building A, Room 117
Washington, D.C. 20001