# In the United States Court of Appeals for the District of Columbia Circuit

IN RE JEFFREY B. CLARK,

*Respondent-Appellant,*

v.

D.C. OFFICE OF DISCIPLINARY COUNSEL,

*Appellee.*

**On Appeal from the United States District Court
for the District of Columbia**

**Nos. 22-mc-00096-RC, 22-mc-00117-RC, and 23-mc-00007-RC**

**BRIEF OF APPELLANT
JEFFREY B. CLARK**

Charles Burnham
Burnham and Gorokhov, PLLC
Suite 300
1750 K Street, NW
Washington DC 20006
(202) 386-6920
charles@burnhamgorokhov.com

Harry W. MacDougald
Caldwell, Carlson,
    Elliott & DeLoach LLP
Suite 1600 Atlanta
Two Ravinia Drive
Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com

*Attorney(s) for Appellant
Jeffrey B. Clark*

# CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), the Appellate states as follows:

## I. PARTIES AND *AMICI*

Jeffrey B. Clark, Respondent-Appellant

D.C. Office of Disciplinary Counsel, Appellee

There are no *amici curiae* at this time.

## II. RULINGS UNDER REVIEW

1. Memorandum and Order remanding case to the District of Columbia Court of Appeals and its adjuncts (the Board of Professional Responsibility and Hearing Committee #12), *In re Clark*, --- F. Supp. 3d ---, 2023 WL 3884119 (June 8, 2023) (Contreras, J.) 542.

2. Memorandum and Order denying Motion to Stay and denying as moot Motion for Supplemental Briefing (Aug. 25, 2023) JA 700.

## III. RELATED CASES

This case was before the Court under the same consolidated case numbers for purposes of adjudicating two requested stays pending appeal. The Court denied the stays pending appeal on October 26, 2023 in a per curiam order.

Two related cases exist in the D.C. Court of Appeals ("DCCA"), the second of which remains pending:

1. *In re Clark*, DCCA No. 22-BS-0059 (dismissed as moot Sept. 15, 2022).

2. *In re Clark*, DCCA No. 22-BG-0891 (still pending as of Dec. 6, 2023).

Additionally, this case is related to the criminal action pending in Fulton County Georgia Superior Court captioned as *State of Georgia v. Trump, et al.*, No. 23SC188947 (pending).

Mr. Clark removed the Fulton Superior Court Criminal case to the U.S. District Court for the Northern District of Georgia, in *State of Georgia v. Jeffrey B. Clark*, Case No. 1:23-CV-03721-SCJ.

That case was remanded, and Mr. Clark appealed the remand to the U.S. Court of Appeals for the Eleventh Circuit, as *State of Georgia v. Jeffrey B. Clark*, Case No. 23-13368.

**CORPORATE DISCLOSURE STATEMENT**

Neither of the parties to this appeal are non-governmental corporations, associations, joint ventures, syndicates, or other similar entities and so there is no obligation for Mr. Clark (or for the Appellee) to file a corporate disclosure statement under Fed. R. App. P. 26.1(a) or D.C. Cir. Rule 26.1(a).

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES .............. i

    I.   Parties and *Amici* .............................................................................. i

    II.  Rulings Under Review ................................................................. i

    III. Related Cases ............................................................................. i

CORPORATE DISCLOSURE STATEMENT ....................................... iii

TABLE OF AUTHORITIES ................................................................ vi

GLOSSARY OF ACRONYMS AND ABBREVIATIONS....................x

INTRODUCTION ...............................................................................1

JURISDICTIONAL STATEMENT .......................................................3

STATEMENT OF THE ISSUES............................................................6

PERTINENT STATUTES AND REGULATIONS..................................6

STATEMENT OF THE CASE................................................................7

    1.   *The Durbin Complaint Letter and the Confidential Investigative Phase (Oct. 2021-January 2022)* ........................................................7

    2.   *Continuance of the Investigative Phase and DCCA Under-Seal Subpoena Litigation (February to March 2022)*...................................9

    3.   *The Charging and Answer Phase (July 2022 to September 2022)* .....10

    4.   *Motions Phase (September to October 2022)* .....................................13

    5.   *The First Removal (October 2022)* ....................................................15

    6.   *The Second Removal (November 2022)* .............................................17

    7.   *The Third Removal and DCCA Stay (January 2023)* .........................17

    8.   *The Remand Order* ............................................................................19

9.  *Proceedings in This Appeal* ................................................20

10. *Parallel Proceedings in the DCCA* ...................................21

STANDING ...........................................................................22

SUMMARY OF THE ARGUMENT ....................................22

ARGUMENT ........................................................................23

I.  The District Court Erred In Rejecting Removal On The Ground That Bar Discipline Cases Are Neither Civil Actions Nor Criminal Prosecutions. ...........................................25

   A.  The Removal Here Meets the Two-Part Test of *Trump Old Post Office.* .............................................25

   B.  This Case Is Removable Under the Text of Section 1442. .................25

   C.  All of the Reasons Given by the District Court for Remand Fail. .......28

II. The District Court Erred In Rejecting Removal On The Ground That Section 1442(d)(1) Did Not Permit the Removal. ....................................37

   A.  Section 1442(d)(1), Standing Alone, Allows Removal. .....................37

   B.  The District Court's Contrary Reasoning Cannot Overcome Section 1442(d)(1)'s Plain Text. ........................................41

III. The District Court Erred In Rejecting Removal Because The District Of Columbia Has No Authority To Discipline An Attorney Working On A Confidential Policy Matter Inside The Executive Branch. ..............46

CONCLUSION .....................................................................50

STATUTORY ADDENDUM ........................................... A-1

CERTIFICATE OF SERVICE .............................................52

CERTIFICATE OF COMPLIANCE....................................53

# TABLE OF AUTHORITIES

## Cases

*Agyin v. Razmzan*, 986 F.3d 168 (2d Cir. 2021) ...................................................25

*Ala. Bar Ass'n v. Dickerson*, 240 F. Supp. 732, 734 (D. Ala. 1965) ......................34

*Amistead v. C&M Transp.*, 49 F.3d 43 (1st Cir. 1995) ...........................................47

*Arizona v. Manypenny*, 451 U.S. 232 (1981) ...........................................................39

*Baker v. Atl. Richfield Co.*, 962 F.3d 937 (7th Cir. 2020) .....................................25

*Barrow v. Hunton*, 99 U.S. 80 (1878) ......................................................................50

*BedRoc Ltd., LLC v. United States*, 541 U.S. 176 (2004) .....................................48

*BP plc v. Mayor and City Council of Baltimore*, 141 S. Ct. 1532 (2021) ...............6

*Branch v. Smith*, 538 U.S. 254 (2003) .....................................................................55

*Brown & Williamson*, 62 F.3d 408 (D.C. Cir. 1995) ............................. 2, 40, 44, 45

*California v. Mesa*, 813 F.2d 960 (9th Cir. 1987) ..................................................36

*Caterpillar v. Williams*, 482 U.S. 386 (1987) ...........................................................4

*City of Neodesha v. BP Corp. N. Am.*, 176 F. Supp. 3d 1233 (D. Kan. 2016) ........36

*Colorado v. Symes*, 286 U.S. 510 (1932) .................................................................56

*Colorado v. Ziankovich*, No. 19-cv-3087, 2019 WL 6907460 (D. Colo. Dec. 19, 2019) ................................................................................................................34

*Ford v. Mabus*, 629 F.3d 198 (D.C. Cir. 2010) .....................................................29

*In re Artis*, 883 A.2d 85, 98 (D.C. 2005) ......................................... 4, 17, 28, 32, 36

*In re Ruffalo*, 390 U.S. 544 (1968) .........................................................................37

*In re Stanton*, 470 A.2d 281 (D.C. 1983) ...............................................................15

*Iselin v. United States,* 270 U.S. 245 (1926) ...................................................... 52, 53

*Jefferson Cty. v. Acker*, 527 U.S. 423 (1999) ............................................ 14, 26, 50

*Kolibash v. Comm. on Legal Ethics of W. Va. Bar*, 872 F.2d 571 (4th Cir. 1989) ........................................................................................ 2, 3, 24, 38, 39, 40

*Lamie v. United States Tr.*, 540 U.S. 526 (2004) .....................................................31

*Leis v. Flynt*, 439 U.S. 438 (1979) .................................................................... 21, 33

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367 (2020) ................................................................53

*Maryland v. Soper*, 270 U.S. 9 (1926) .......................................36

*Mass. Bd. of Bar Overseers v. Belanger*, No. 20-cv-10445, 2020 WL 1821826 (D. Mass. Apr. 10, 2020) ................................................34

*Mesa v. California*, 489 U.S. 121 (1989) ....................................36

*Milwaukee County v. M.E. White Co.*, 296 U.S. 268 (1935) ..................51

*Nichols v. United States*, 578 U.S. 104 (2016) .......................... 52, 53

*North Carolina v. Carr*, 386 F.2d 129 (4th Cir. 1967) .....................55

*Ohio v. Doe*, 433 F.3d 502 (6th Cir. 2006) ................................46

*Or. Bureau of Lab. and Indust. ex rel. Richardson v. West Comms.*, 288 F.3d 414 (9th Cir. 2002) ..................................................39

*Petit v. Dep't of Educ.*, 675 F.3d 769 (D.C. Cir. 2012) ...................32

*Potter v. United States*, 155 U.S. 438 (1894) .............................32

*Ratley v. U.S. Postal Serv.*, 953 F.Supp.2d 270 (D.D.C. 2013) .............47

*Ratzlaf v. United* States, 510 U.S. 135 (1994) ...........................48

*Rotkiske v. Klemm*, 140 S. Ct. 355 (2019) ................................53

*Sup. Ct. of Cal. v. Kinney*, No. 15-cv-1552, 2015 WL 3413232 (N.D. Cal. May 27, 2015) ............................................................34

*Tennessee v. Davis*, 100 U.S. 257 (1879) .................................56

*Travelers Prop. Cas. v. Good*, 689 F.3d 714 (7th Cir. 2012) ...............47

*United States v. Gonzales*, 520 U.S. 1 (1997) ............................30

*Willingham v. Morgan*, 395 U.S. 402 (1969) ..............................55

*Wisconsin v. Pelican Ins. Co.*, 127 U.S. 265, 299 (1888), *overruled on other grounds by Milwaukee County v. M.E. White Co.*, 296 U.S. 268 (1935) ...........51

*Wuxi Taihu Tractor Co. v. York Grp.*, 460 Fed. App'x 357 (5th Cir. 2012) .... 45, 46

**Statutes**

28 U.S.C. § 1331 ......................................................... 4, 6, 16

28 U.S.C. § 1441 ..........................2, 4, 6, 16, 20, 30, 31, 32, 35, 36, 38, 42, 43, 46

28 U.S.C. § 1445 ........................................................ 6, 32, 36, 47

28 U.S.C. § 1446(d) .......................................................... 16, 17, 18

28 U.S.C. § 1447(d) ............................................................ 5, 20, 22

28 U.S.C. § 1451 ................................................................................38

28 U.S.C. § 530B ........................ 3, 6, 14, 20, 23, 24, 44, 47, 48, 49, 50

84 Stat. 473 (1970)............................................................................28

D.C. Code tit. 11, ch. 25 ...................................................................29

Pub. L. 112-239, 126 Stat. 1969, § 1087 (Jan. 2, 2013) ................... 49, 50

Pub. L. 112-51, 136 Stat. 2114 (Nov. 9, 2011)................................ 48, 50

Pub. L. No. 91-358, § 101..................................................................28

**Rules**

Chapter 7 of the Rules of teh D.C.Bar Board of Professional Responsibility.........38

D.C. Bar Rule XI, § 1(a) ...................................................................26

D.C. Bar Rule XI, § 4(e)(4) ...............................................................26

D.C. Circuit Rule 28(a)(5) ...................................................................6

Federal Rule of Appellate Procedure 26....................................................5

Federal Rule of Appellate Procedure 4 .....................................................5

Federal Rule of Civil Procedure 58(a)........................................................5

**Treatises**

A. Scalia & B. Garner, READING LAW: THE INTERPRETATION OF LEGAL TEXTS
(2012) .........................................................................................48

Charles A. Wright & Arthur R. Miller, 14C FEDERAL PRACTICE AND
PROCEDURE § 3721.1 (4th ed. 2023) .................................................42

**Regulations**

28 C.F.R. § 77.2 ...................................................... 15, 21, 10

28 C.F.R. § 77.5 ................................................................................25

28 C.F.R. part 77 .................................................................................7

**Other References**

*Black's Law Dictionary* (11th ed. 2019)............................................................ 38, 40

House Report: No. 112–17, pt. 1 .............................................................49

## GLOSSARY OF ACRONYMS AND ABBREVIATIONS

Board ........................................................D.C. Board of Professional Responsibility

DCCA......................... District of Columbia Court of Appeals (local Article I court)

ODC ............. D.C. Office of Disciplinary Counsel (formerly called "Bar Counsel")

# INTRODUCTION

This is a paradigmatic case for removal under the federal-officer removal statute, 28 U.S.C. § 1442. Appellant Jeffrey B. Clark was a Senate-confirmed Assistant Attorney General for the Environment & Natural Resources Division from November 1, 2018 to January 14, 2021 and the Acting Assistant Attorney General of the United States for the Civil Division from September 5, 2020 to January 14, 2021. JA 2.

Prior to the 2020 election controversies, which have seen the weaponization of attorney discipline proceedings against lawyers who have been painted as allied with President Trump,[1] Mr. Clark enjoyed an excellent reputation with no question ever being raised as to his ethics. Just as Professor Tribe and David Boies never faced bar discipline for challenging the 2000 election, so Mr. Clark's purely confidential internal advocacy within the Executive Branch should not be the subject of bar disciplinary proceedings.

This case was properly removed under Section 1442, especially after

---

[1] *Compare* Lachlan Markay & Jonathan Swan, *Scoop: High-Powered Group Targets Trump Lawyers' Livelihoods*, AXIOS (Mar. 7, 2022) (65 Project founder David "Brock told Axios in an interview that the idea is to 'not only bring the grievances in bar complaints, but shame them and make them toxic in their communities and in their firms.") *with* Alan M. Dershowitz, *Dershowitz: I Will Defend Any Lawyer Targeted by McCarthyist '65 Project,'* BREITBART (Mar. 10, 2022) ("[B]ack then no one suggested going after the hundreds of lawyers who tried to prevent Bush's certification [in the 2020 presidential election]. A dangerous weapon, like the 65 Project, unleashed by Democrats will surely be used by Republicans ….").

Congress clarified in 2011 that "any proceeding" against a federal official can be removed. 28 U.S.C. § 1442(d)(1). The District Court cites several pre-2011 cases denying federal officers their removal rights as to bar discipline cases against them but gives short shrift to *Kolibash v. Comm. on Legal Ethics of W. Va. Bar*, 872 F.2d 571 (4th Cir. 1989), which reversed a remand order against a former United States Attorney, allowing him to remove the West Virginia bar discipline case against him. The District Court disparaged *Kolibash* as using a "functional approach," but *Kolibash* perfectly anticipated the 2011 amendments, which effectively adopted the functional approach.

This Court also anticipated Congress's expansion in Section 1442(d)(1) allowing subpoenas to be removed, which this case also involves (*i.e.*, the issuance of multiple subpoenas sent to against Mr. Clark). *See Brown & Williamson*, 62 F.3d 408, 415 (D.C. Cir. 1995) (applying a functional approach to allow removal of a subpoena action against a Congressman 16 years before Congress placed the propriety of such removals beyond dispute by enacting Section 1442(d)(1)).

The District Court made numerous other errors as set forth below. Beyond the error of classifying bar discipline matters—despite the removability of "any proceeding" under Section 1442(d)(1)—as an unremovable *sui generis* third category that is neither civil nor criminal, the District Court also conflated the analyses under 28 U.S.C. §§ 1441 and 1442 and read a statute in which Congress

defined the ethics law applicable to federal attorneys (even though that statute does not reference removability) as somehow barring removal. 28 U.S.C. § 530B (allowing state bars to discipline federal lawyers in certain circumstances).

This case readily meets the test for federal-officer removal set out by this Court in *K&D LLC v. Trump Old Post Off. LLC*, 951 F.3d 503, 506 (D.C. Cir. 2020). Moreover, it is far more important as a policy matter to allow removal here than it was in that case in order to protect Article II Executive Branch attorneys from harassing complaints initiated by a member of the Article I Branch against a senior attorney from the opposing political party.

The Court should grant oral argument in this case. It has not previously addressed the removability of bar discipline cases brought against federal lawyers and it should not lightly create a circuit split with the Fourth Circuit's *Kolibash* decision. Oral argument, which was not held below, might have helped the District Court avoid the errors argued in this appeal.

## JURISDICTIONAL STATEMENT

This is a D.C. Bar disciplinary proceeding removed to federal court. The D.C. Court of Appeals ("DCCA") has characterized such proceedings as "quasi-criminal," *In re Artis*, 883 A.2d 85, 98, 101 & n.19 (D.C. 2005). This inherently and logically means they are part criminal and part civil.

Removal jurisdiction exists over the bar disciplinary proceedings against Mr.

Clark pursuant to 28 U.S.C. § 1442, as that statute permits federal officers to remove to U.S. District Court "civil action[s] or criminal prosecution[s]," defined to mean "any proceeding" in which a judicial order is sought. The disciplinary proceedings here are removable because they related to Mr. Clark's conduct from late 2020 until early 2021 while he was in federal office.

Mr. Clark also removed the case on a complete preemption theory, which in turn makes removal jurisdiction under 28 U.S.C. § 1441 proper, as that statute permits removal of any original jurisdiction civil case to the U.S. District Court. *See Caterpillar v. Williams*, 482 U.S. 386, 393 (1987) ("Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law").

This case unavoidably presents federal questions that are not mere defenses because the DC Bar is here attempting to second guess the conduct of purely internal Executive Branch deliberations about the President's use of his Take Care Clause power and his supervision of his U.S. Justice Department delegates in helping to do the same. As a result, jurisdiction in District Court also existed pursuant to 28 U.S.C. § 1331.

On June 8, 2023, the District Court ordered the removed case to be remanded

back to the DCCA and its adjunct processes.[2] Order (June 8, 2023) JA 541 ("Remand Order").[3] Mr. Clark appealed to this Court on June 11, 2023, making this appeal timely under Federal Rule of Appellate Procedure 4(a). JA 578.

The District Court never entered a separate judgment in accord with Federal Rule of Civil Procedure 58(a). But the 150th day after June 8, 2023 was November 5, 2023 (a Sunday). Accordingly, even if the June 8, 2023 remand order is not considered the date of the judgment, then by operation of Federal Rule of Appellate Procedure 4(a)(7)(A)(ii) and 4(a)(2), this appeal first ripened on November 5, 2023.[4]

This is an appeal from the judgment of remand—regardless of whether that judgment is deemed to have been entered on (a) June 8, 2023, (b) November 5, 2023, or (c) November 6, 2023. Accordingly, this Court has appellate jurisdiction pursuant to 28 U.S.C. § 1447(d) (permitting interlocutory appeals of federal-officer remand decisions). This appeal also carries with it the removal issues not only under Section

---

[2] The DCCA disciplinary process consists of three stages: (1) an initial stage before Hearing Committee (#12 among those Committees has been assigned here); (2) an intermediate stage before the D.C. Board of Professional Responsibility ("Board"); and (3) a final stage before the DCCA itself.

[3] Record documents cited in the simple form "Document [at page #]" are documents that appear in all three consolidated cases below, *i.e.,* Nos. 22-mc-00096-RC, 22-mc-00117-RC, and 23-mc-00007-RC.

[4] Alternatively, the appeal first ripened on November 6, 2023 in accordance with Federal Rule of Appellate Procedure 26 (as that rule advances Sunday deadlines to the next business day, which is November 6, 2023). Nothing turns on whether the appeal ripened on November 5 or November 6, 2023. The appeal is now ripe.

1442 but also under Section 1441. *BP plc v. Mayor and City Council of Baltimore*, 141 S. Ct. 1532 (2021) (allowing appeal, under Section 1447(d), of entire removal orders in cases removed under Section 1442).

## STATEMENT OF THE ISSUES

1. Whether the District Court committed an error of law by concluding bar disciplinary proceedings are neither civil actions nor criminal prosecutions and, for that reason, are unremovable by a federal officeholder under 28 U.S.C. § 1442, despite the fact that disciplinary proceedings are not among the nonremovable actions listed in 28 U.S.C. § 1445.

2. Whether the District Court committed an error of law in construing 28 U.S.C. § 1442(d)(1) in a fashion barring removal of the entire case here and/or its related subpoenas.

3. Whether the District Court committed an error of law in refusing to hold that 28 U.S.C. § 530B (not altered by 28 C.F.R. part 77) completely preempts D.C. Bar regulation of federal-officer lawyers because the District of Columbia was not given any such power, thereby also allowing removal pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1331.

## PERTINENT STATUTES AND REGULATIONS

Consistent with D.C. Circuit Rule 28(a)(5), the pertinent statutes are set forth in the Addendum (separately paginated) following the Conclusion of this brief.

## STATEMENT OF THE CASE

This case has what the District Court rightly described as "a labyrinthine procedural history." Case One, Dkt. # 20 at 11.[5] What follows thus inherently condenses a lot of complexity and can only advert touch on some litigation events.

### 1. *The Durbin Complaint Letter and the Confidential Investigative Phase (Oct. 2021-January 2022)*

On October 7, 2021, Senator Durbin (acting purely for himself, not for the whole Senate Judiciary Committee), sent a letter to the D.C. Office of Disciplinary Counsel ("ODC"). *See* JA 161. The letter asked ODC to open a disciplinary matter against Mr. Clark. *Id.* at 1. ODC opened its confidential investigation one week later. *See* JA 298. Mr. Clark's prior lawyer, Robert N. Driscoll, received a voicemail from D.C. Disciplinary Counsel Hamilton P. ("Phil") Fox III on October 14, 2021 and returned the call the next day. Mr. Driscoll swore that Mr. Fox told him that "the D.C. Bar had received a complaint from a third party about Respondent [Mr. Clark] and that Mr. Fox would forward it to me and that Respondent could respond if we wished to. No mention was made of a subpoena or of accepting service of a subpoena." JA 329. Nor did Mr. Driscoll agree to accept e-mail service of the subpoena. *Id.*

---

[5] The convention for citing record documents in this case where the documents appear only in one of the three consolidated cases is as follows: Case One, Dkt. # __ refers to filings in 22-mc-00096-RC; Case Two, Dkt. # __ refers to filings in 22-mc-00117-RC; and Case Three, Dkt. # __ refers to filings in 23-mc-00007-RC.

Next, on November 22, 2021, Mr. Driscoll received another voicemail from Mr. Fox stating that he had not received a response to a separate communication allegedly sent to Mr. Driscoll containing a letter and a subpoena. *See id.* Three minutes later, Mr. Driscoll called Mr. Fox back indicating that he had not received any such material. *Id.* Mr. Driscoll then also undertook an urgent review of his mail and email and confirmed he had received nothing from Mr. Fox. *See* JA 329-30.

While Mr. Clark was in the process of identifying new counsel (ultimately finding Harry MacDougald and Charles Burnham), he dealt directly with Mr. Fox for a time. Eventually, by a Dropbox-like service, Mr. Clark received a copy of the letter and subpoena on January 6, 2022. Mr. Fox then agreed to allow Mr. Clark until January 31, 2022 to respond.  JA 334.[6] At no time did Mr. Clark agree to accept email service of the subpoena. JA 335.

Mr. MacDougald began representing Mr. Clark in this matter in January 2022. *Id.* at pdf page 52. He informed Disciplinary Counsel Fox that Mr. Clark would not be providing documents in response to the subpoena and did not agree to accept service of it. On the afternoon of January 28, 2022, Mr. Fox then threatened Mr. Clark through his counsel, Mr. MacDougald, stating "'I promise you I will ratchet

---

[6] The subpoena sought documents from Mr. Clark's tenure in the Justice Department but there was no corresponding subpoena issued to the Justice Department of which we are aware. We cannot understand why Mr. Fox did not begin by subpoenaing DOJ. *See* Case One, Dkt. #1 at 18.

up' the sanction to be imposed if [Mr. Clark] assert[s] the Fifth." *Id.* Later that same evening, Mr. Fox sent an email in which he further threatened Mr. Clark not to assert his Fifth Amendment privilege because "a frivolous assertion of the privilege may lead to an additional charge or may be the basis of an independent specification of charges in the event that we conclude not to bring charges on the underlying matters." *Id.*

On January 31, 2022, we sent two responsive letters to ODC. The longer letter provided an extensive set of substantive legal responses to Senator Durbin's allegations and urged ODC not to bring disciplinary charges. The shorter letter invoked the Fifth Amendment and other privileges, such as executive and law enforcement privilege, to resist complying with ODC's document subpoena. *See id.* at 4-5; JA 167; JA 463; *see especially Id.* at 84 (letter from President Trump's attorney, Douglas A. Collins, instructing Mr. Clark to stand on executive privilege).

### 2. Continuance of the Investigative Phase and DCCA Under-Seal Subpoena Litigation (February to March 2022)

Mr. Fox responded by filing a motion to compel under seal in the DCCA on February 3, 2022. JA 216. Extensive briefing ensued on the issues of privilege and whether the subpoena had been properly served. Mr. Clark agreed to be at his home on February 28, 2022 to receive an attempt at lawful service. Mr. Clark personally met the person delivering documents that day. Service of this subpoena by a lawyer who reports to Mr. Fox and is employed by ODC was invalid, as D.C. Superior Court

Rule 45(b)(1) (incorporated by reference into the Rules of the District of Columbia Bar by Rule XI, § 18(a)), requires service by a ***non-party***. *See, e.g.,* JA 381-82.[7]

The briefing on the motion to compel dispute was fully submitted as of March 17, 2022. JA 372. The DCCA never ruled on the dispute, however.

### 3. *The Charging and Answer Phase (July 2022 to September 2022)*

On July 19, 2022, ODC decided it did not need the subpoenaed materials after all in order to bring charges (contrary to the whole gist of its motion to compel). JA 1 ("Charges").

The Charges alleged that Mr. Clark had violated the D.C. Rules of Professional Conduct by drafting a letter that he proposed for two of his Justice Department Superiors and himself to sign, if and when the letter was agreed to and finalized. The draft letter listed as addressees the heads of both houses of the Georgia Legislature and cc-ed the Governor of Georgia. The letter suggested to the other two DOJ signatories that they agree with Mr. Clark that there were sufficient irregularities in the 2020 presidential election in Georgia, particularly based on a documented Georgia Senate investigation, such that the Georgia Legislature should call itself into special session and conduct a further investigation into whether

---

[7] Mr. Clark stood on his rights to insist on proper service of the subpoena for two reasons: (1) ODC had earlier falsely claimed Mr. Driscoll had agreed to accept email service when he had never done so—a fact we thought it was important to apprise the DCCA of and not voluntarily moot; and (2) ODC filed a motion to compel with the DCCA even before attempting any form of service of the subpoena.

Georgia's electors for Biden were the proper electors. ODC charged that Mr. Clark breached (1) Rules 8.4(a) and (c) based on what ODC alleged were "attempted … false statements" in the letter; and (2) Rules 8.4(a) and (d) because Mr. Clark advocated to the President and his superiors at the Justice Department to send the letter and doing so allegedly would have seriously interfered with the administration of justice. JA 48. It is undisputed that the draft letter was never sent because, after an internal debate held in the Oval Office on the evening of January 3, 2021, President Trump decided not to send it.

Mr. Clark filed an Answer on September 1, 2022. JA 102 ("Answer"). Mr. Clark advanced a host of constitutional, jurisdictional, and other defenses. He began by pointing out that ODC could not file the Charges while its DCCA subpoena action was still pending because the Board and Hearing Committee #12 (the lower stages of the process reporting to the DCCA) were divested of jurisdiction pending completion of the DCCA case. *Id.*, Dkt. #1-21 at 2 JA 106. This led to the DCCA issuing an order on September 15, 2022 dismissing ODC's subpoena action as moot. The rationale for mootness was that in the pending case ODC was seeking enforcement of an investigative-stage subpoena, whereas the investigative stage had ended once public Charges were filed in July 2022. Case One, Dkt. # 1-45 JA 154. Mr. Clark responded by filing his first notice of removal to the United States District Court for the District of Columbia below on October 17, 2022. Case One, Dkt. # 1

JA 1 ("First Notice of Removal").

The merits of ODC's weak and unprecedented case against Mr. Clark are not at issue in this appeal, so we will not belabor all of the legal defenses that Mr. Clark has advanced but will provide two examples. For instance, Mr. Clark's Third Defense contended in part:

> The D.C. Bar lacks jurisdiction over the conduct of the Respondent referred to in the Charges because the President has an absolute right to seek legal and other forms of advice as to the discharge of his responsibilities under the Take Care Clause, U.S. Const., art. II, § 3, and officers of the United States have an absolute duty and corresponding privilege to provide their opinions on a confidential basis when the President so asks. U.S. Const. art. II, § 2, cl. 1 (Opinion Clause). D.C. R.P.C. 2.1.3.

Answer, Dkt. # 1-21 at 3 JA 105. Mr. Clark's views about irregularities in the presidential election held in Georgia were more aligned with President Trump than other Justice Department and White House Counsel's Office colleagues. The gravamen of this defense is that holding or advancing such views in a confidential setting is no basis for bar discipline.

A second exemplar defense responds to ODC's implication, Charges, Dkt. # 1-2 at 8 JA 47, that there was something wrong with the fact that the President initially wanted Mr. Clark to take the role of Acting Attorney General:

> The D.C. Bar lacks jurisdiction over the conduct of Respondent referred to in the Charges under the Constitution of the United States because attempting to assert jurisdiction over Respondent's conduct as alleged in the Charges would intrude on the President's exclusive and unreviewable authority to remove and appoint senior officials of the

Department of Justice. See U.S. Const. art. II, § 2, cl. 2 (Appointments Clause). Note as well that the House Select Committee on January 6 presented evidence that at the time an Oval Office meeting is said to have commenced on January 3, 2022, Respondent was then the Acting Attorney General of the United States, even though that later changed.[8]

Answer, Dkt. # 1-21 at 4-5 JA 106-07.

At no point in the briefing below did ODC argue for a remand on a theory that Mr. Clark did not present a colorable federal defense to the Charges. *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999) (removing federal officers must "raise a colorable legal defense").

### 4. *Motions Phase (September to October 2022)*

Numerous other filings were made in the local disciplinary process. We briefly sample these as well:

***First***, on September 1, 2022, Mr. Clark filed a motion to dismiss arguing that the D.C. Bar disciplinary process lacks jurisdiction over him because (1) the District of Columbia is not a "State" within the meaning of 28 U.S.C. § 530B (the statute on which ODC relies for authority to discipline Mr. Clark as a federal lawyer); (2) the Justice Department regulations at 28 C.F.R. § 77.2 do not confer jurisdiction either; (3) the proviso in Section 530B and 28 C.F.R. § 77.2(j)(2) requiring ODC to show

---

[8] Excerpt from House Select January 6 Committee Hearing Held June 23, 2022, *available at* https://rumble.com/v3g2jjs-committee-mentions-jeff-clark.html (last visited Dec. 6, 2023).

that the Rules of Professional Conduct are "ordinarily appl[ied]" to conduct like Mr. Clark's cannot be satisfied when there has never been a disciplinary case—public or private—over a letter never sent or a position taken in a privileged and confidential internal debate; and (4) official immunity. Case One, Dkt. # 1-20 JA 59. On September 12, 2022, the Chair of Hearing Committee #12 refused to act on the motion to dismiss, even its jurisdictional component, on the theory that he had no authority to do so and that evidentiary hearings must be held first even where jurisdictional challenges are pending. Case One, Dkt. #1-43 at 4 (Sept. 12, 2022) JA 138 (citing *In re Stanton*, 470 A.2d 281, 285 (D.C. 1983)). But *In re Stanton* did not involve a jurisdictional challenge. Rather, the respondent there was only contesting whether he was given fair notice of the charges against him—matters the Board characterized as "detours into questions of pleading and form." *Id.* at 284-85. By contrast, whether there is subject matter jurisdiction is not a nicety of pleading or form but an indispensable prerequisite to going forward.

***Second***, on August 29, 2022, Mr. Clark filed a motion to defer the disciplinary case under Board Rule 4.2 until three investigations were completed by (1) the U.S. Department of Justice; (2) the House Select Committee on January 6; and (3) the Fulton County, Georgia District Attorney. Case One, Dkt. # 1-16. The Board denied

the request to defer on September 27, 2022. Case One, Dkt. # 1-49 JA 158.[9]

Shortly after the Board denied the deferral motion, the Chair of Hearing Committee #12 ordered a prehearing conference for October 6, 2022. Case One, Dkt. #1 at 21-22 JA 21-22; Dkt. #1-50 (Sept. 29, 2022) JA 1-50. The Chair of Hearing Committee #12 again refused to decide or permit resolution of the threshold jurisdictional questions before the evidentiary hearing.

### 5. *The First Removal (October 2022)*

Being left with no alternative to obtain a threshold ruling on the D.C. Bar's jurisdiction than to remove (and with the hope that *Ruhrgas* and *Steel Company* would actually be respected in an Article III court), we removed the case on October 17, 2022. First Notice of Removal at 22 JA 22. As noted in the Jurisdiction section

---

[9] In light of Mr. Clark's indictment in Fulton County, Georgia on August 14, 2023, *see State of Georgia v. Trump*, No. 23SC188947 (Fulton Cty. Super. Ct.) (pending), Mr. Fox's January 28, 2022 threat to stack discipline against Mr. Clark if he chose to invoke the Fifth Amendment is spotlighted as entirely improper.

When the time comes, Mr. Clark will press his arguments that deferral was wrongly denied. As a *de facto* matter, the D.C. Bar routinely defers to pending criminal proceedings but refuses here. D.C. Bar member Robert ("Hunter") Biden is not even being investigated by ODC despite a pending criminal tax prosecution in Delaware. The DC Bar allowed FBI lawyer, Kevin Clinesmith to conclude his criminal matter before initiating disciplinary proceedings. We are making these comparisons to build an equal protection defense based on disparate treatment re viewpoint and political affiliation.

of the brief above, we removed based on 28 U.S.C. §§ 1441 (First Notice of Removal at 28-34 JA 28-34) & 1442 (*see id.* at 22-28 JA 22-28).[10]

The First Notice of Removal did not just to remove the Charges as constituting a civil action or criminal prosecution, citing *In re Artis, supra*, but noted that the issuance of the new subpoena on October 6, 2022 also constituted a "proceeding" within the ambit of Section 1442, thereby permitting removal on that ground as well. 28 U.S.C. § 1442(d)(1); *see also* First Notice of Removal at 28 JA 1. We also made clear that because we had removed not just on the Section 1442 federal-officer ground but on the Section 1441/Section 1331 federal question/complete-preemption ground, 28 U.S.C. § 1446(d) applied and an automatic stay of the D.C. Bar process arose upon removal to District Court. First Notice of Removal at 34-35 JA 34-35. Out of an abundance of caution, we moved to stay the subpoena response deadline (and other deadlines that would have been applicable in the local process prior to removal) on October 18, 2022. Case One, Dkt. #2 JA 393, and moved to quash the subpoena on October 19, 2022. *Id.* at Dkt. #4 JA 402.

ODC filed its first motion for remand on October 21, 2022. *Id.* at Dkt. #5. ODC also opposed the motion to stay the subpoena response and other deadlines. *See id.* at Dkt. #6 JA 431. And by November 8, 2022, briefing on the foregoing

---

[10] There was a typographical error in some parts of the First Notice of Removal referring to some 28 U.S.C. provisions as 42 U.S.C. provisions. We offered to file a corrected version but neither ODC nor the District Court insisted we do so.

motions was complete. *Id.* at Dkt. ## 10, 11, 13, and 14 JA 466, 481, 486.

### 6. *The Second Removal (November 2022)*

Despite the automatic stay in 28 U.S.C. § 1446(d), ODC filed a motion to enforce the October 6, 2022 subpoena in the DCCA on October 26, 2022, just nine days after we had removed the entire matter (including the October 6 subpoena, pursuant to Section 1442(d)(1)). Case Two, Dkt. #1 at 3 JA 715. This left us no choice but to file the Second Notice of Removal, which we did on November 25, 2022. *See generally id.*, Dkt. #1 JA 712.

On November 29, 2022, ODC moved to remand the second removed case involving the October 6 subpoena back to the local process. Case Two, Dkt. # 4 JA 768. On December 12, 2022, we moved to consolidate the Second Notice of Removal with the First Notice of Removal. Case One, Dkt. #15 JA 519. Briefing on the motions practice triggered by the second removal was complete as of December 19, 2022. Case Two, Dkt. # 9.

### 7. *The Third Removal and DCCA Stay (January 2023)*

Again, in derogation of Section 1446(d)'s automatic stay, ODC persisted in its efforts to continue litigating in the local bar forums despite the first and second removal. Specifically, on December 19, 2022, ODC asked Mr. Clark to consent to service of a third subpoena for certain documents. "On December 23, 2022, counsel for Respondent declined to accept service, explaining that as a result of the two prior

removals, there was no authority in the DCCA or its adjuncts to issue a subpoena, and that the case resided instead exclusively in federal District Court and thus was subject to its rules and future orders concerning discovery." Case Three, # Dkt. #1 at 4 JA 781.

Two days after Christmas 2022, ODC attempted to serve the third subpoena on Mr. Clark at his home. Mr. Clark communicated to his son, who answered the door, that he would not accept service of the subpoena in light of the first and second removals and the shift of exclusive jurisdiction to the District Court. *Id.* at 4-5 JA 781-82.

Continuing his pattern of threats to heighten discipline when faced with Mr. Clark standing on his legal rights, Disciplinary Counsel Fox stated by email on the evening of December 27, 2022: "You have never cited authority that prevents me from serving Mr. Clark. We will continue to do so and will cite his refusal to accept service as a factor in aggravation of sanction." *Id.* at 5 JA 782. Of course, that claim ignored that we had repeatedly put Mr. Fox on notice of Section 1446(d).

On December 28, 2022, Mr. Fox wrote again, "taking the position that service was effective even though it was not in fact completed and no copy of the subpoena was left at Respondent's residence. The email then for the first time attached a copy of the subpoena." Case Three, Dkt. #1 at 5 JA 782. More details about the dispute over the December 2022 subpoena (where we explain other misrepresentations Mr.

Fox made in that process) appear in the Third Notice of Removal. *See generally* Third Case, Dkt. #1 JA 777.

While we were drafting the Third Notice of Removal, the DCCA issued a *sua sponte* order on January 17, 2023 ordering in light of the second removal as follows:

> ORDERED that Disciplinary Counsel's motion to enforce its subpoena duces tecum is held in abeyance until respondent's removal of this matter to the United States District Court for the District of Columbia has been resolved. It is
>
> FURTHER ORDERED, that the parties hereto shall promptly inform us of the District Court's action on the removal.

*Id.* at 8 JA 785.

Nevertheless, out of an abundance of caution, we went on to file the Third Notice of Removal on January 26, 2023. Third Case, Dkt. #1 JA 777. ODC filed its third motion to remand on February 8, 2023. *Id.*, Dkt. # 4 JA 830. We then moved to consolidate the third removal with the first and second removals. *Id.*, Dkt. #6. We opposed ODC's third motion to remand on February 22, 2022— and in that posture the case remained for many months.

### 8. *The Remand Order*

On June 8, 2023, the District Court ordered remand and issued a memorandum opinion. *Id.*, Dkt. ## 7 & 8 JA 541 & 542.

- The Court held that bar disciplinary proceedings are neither "civil actions" nor "criminal prosecutions," and thus were unremovable under Section

1442's. Case Three, Dkt. # 8 at 14-19 JA 556-61 (hereafter "Remand Order at JA 556-61 ").

- The Court also rejected the complete preemption/federal question removal under Section 1441, holding that States and the District of Columbia are not precluded from regulating federal attorneys by the limitations of Section 530B and Section 77.2 and thus that the ordinary presumption that all lawyers are subject to state and local bar jurisdiction under *Leis v. Flynt*, 439 U.S. 438 (1979), applies to allow the DCCA to regulate Mr. Clark's conduct inside the Executive Branch. Remand Order at 32-33 JA 573-74.

- Finally, the District Court rejected the removability of the subpoenas and otherwise misconstrued Section 1442(d)(1). *Id.* at 33-36 JA 574-77.

### 9. *Proceedings in This Appeal*

Mr. Clark appealed the District Court's ruling to this Court under Section 1447(d), since it was a decision remanding a federal-officer removal. Case One, Dkt. # 21 JA 102.

We moved for stay pending appeal in the District Court on July 11, 2023. *See id.* at Dkt. #25 JA 580. Briefing on the stay motion and related post-remand order motions was complete by August 2, 2023. *Id.* at Dkt. ## 26, 27, 28, 29, 30, and 31 JA 608, 637, 644, 647, 674, and 678. To meet the deadline for procedural motions in this Court, we then moved for stay here on July 14, 2023. Document # 2008042.

Briefing on that stay motion was completed by July 31, 2023. Document # 2010379.

We moved for a second stay in the District Court on August 17, 2023, principally based on the Fulton County indictment of Mr. Clark on August 14, 2023—which also included President Trump. Case Three, Dkt. # 32 JA 682. ODC opposed on August 18, 2023. *Id.*, Dkt. # 33 JA 695. The District Court denied both the first and second stays on August 25, 2023. *Id.*, Dkt. #34 JA 700.

We next sought a second stay from this Court on August 31, 2023 (docketed with errata on September 1, 2023). Document # 2015119. On October 26, 2023, this Court denied both motions for stay. Document # 2023887.

### 10.  *Parallel Proceedings in the DCCA*

ODC notified the DCCA of the District Court's June 8, 2023 remand order on June 9, 2023. Document # 2008877, Exh. 1. Four days later, we asked the DCCA, out of an abundance of caution, to continue the January 17, 2023 stay of the disciplinary proceedings pending this appeal and/or to enter a general deferral. *Id.* at Exh. 2. Briefing on that motion was complete by June 23, 2023. *Id.* at Exhs. 3-5. When it appeared that Hearing Committee #12 would move forward in the wake of the Remand Order, we moved the DCCA to expedite its resolution of the pending stay/deferral motion. *Id.* at Exh. 6.

On August 25, 2023, ODC filed a notice with the DCCA of the District Court's denial of Mr. Clark's two stay motions. ODC then filed, on October 3, 2023,

notice of the certified mailed copy of the June 8 remand order sent to the DCCA. *Id.* The mailing of such a certified copy is required by 28 U.S.C. § 1447(d) in order for the state/local forum removed from to reacquire jurisdiction. On October 12, 2023, Mr. Clark filed an emergency supplement to the June 12, 2023 to continue abeyance or enter a general deferral. DCCA Docket Sheet at 2. Briefing on that motion was complete as of October 16, 2023. *Id.* Finally, ODC filed a notice with the DCCA on October 26, 2023 informing the DCCA of this Court's denial of the two stay motions.

Lastly, today, December 6, 2023, the DCCA denied Mr. Clark's motions to continue the abeyance or defer Hearing Committee proceedings pending resolution of this appeal and the criminal case in Georgia, and granted ODC's motion to enforce its second subpoena.

## STANDING

Consistent with D.C. Circuit Rule 28(a)(7), we assert that Mr. Clark's standing to pursue this appeal is self-evident from the administrative record. *See generally* Exhibits to First Notice of Removal (Oct. 17, 2022) JA 1. Mr. Clark plainly possesses standing to challenge any attempt to discipline him.

## SUMMARY OF THE ARGUMENT

Mr. Clark is a federal officer entitled to remove "any proceeding" against him concerning actions he undertook while in office. 28 U.S.C. § 1442(a) & (d)(1). The

Fourth Circuit in *Kolibash* allowed the removal of an inadequate-supervision claim of unethical conduct filed by the West Virginia Bar against the U.S. Attorney of the Northern District of West Virginia. Word constraints prevent us from setting out the political overtones of that case but suffice to say it involved Democrat vs. Republican politics during the Reagan Administration at a time when West Virginia was more heavily Democratic than it is now. *Kolibash* is the only on-point appellate precedent and it should have been applied to permit removal here, as should the plain text of Section 1442.

Removal also should have been permitted on a complete-preemption ground because the District of Columbia is not a "State" within the meaning of Section 530B and Justice Department regulations not only do not apply to discipline cases of first impression, they cannot expand Section 530B's authorization to state bar authorities to seek discipline to the District of Columbia as the federal regulations by their terms are purely internal to the federal DOJ and do not authorize Article I or Article III courts—or authorize Article I quasi-prosecutorial bodies like ODC—to enforce those rules. *See* 28 C.F.R. § 77.5 (rules "intended solely for the guidance of attorneys for the government" and cannot be wielded by "any other person").

The District Court's conclusion that Section 530B impliedly repeals Section 1442 is flatly contrary to settled principles of statutory construction.

## ARGUMENT

All issues in this appeal are purely legal in nature. As such, they are subject to a *de novo* standard of review. *See, e.g., Agyin v. Razmzan*, 986 F.3d 168, 173–74 (2d Cir. 2021) ("We review an appeal from an order of remand *de novo*."); *Baker v. Atl. Richfield Co.*, 962 F.3d 937, 941 (7th Cir. 2020) ("We review subject-matter jurisdiction and the propriety of the removal of a state-court action de novo.") (cleaned up).

The first and second assignments of error below are governed by ***two distinctly pro-removal standards of review***. To wit:

> We apply a two-step test in officer-removal cases. First, the officer must "raise a colorable federal defense." *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999). Second, the officer must show that the suit is one "for or relating to any act under color of [his] office." 28 U.S.C. § 1442(a)(1). **[1]** ***We must construe the statute liberally in favor of removal***, *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007), ***and* [2]** ***"we credit the [officer's] theory of the case for purposes of both elements of"*** the removal inquiry, *Acker*, 527 U.S. at 432.

*Trump Old Post Off.*, 951 F.3d at 506 (emphasis/numbering added).

The District Court cited the *Trump Old Post Office* decision but honored it only in the breach. *See* Remand Order at 13 JA 555. Nowhere in the decision did the District Court even acknowledge that it must credit Mr. Clark's theory of the case. Reversal could be ordered on that alone.

## I. THE DISTRICT COURT ERRED IN REJECTING REMOVAL ON THE GROUND THAT BAR DISCIPLINE CASES ARE NEITHER CIVIL ACTIONS NOR CRIMINAL PROSECUTIONS.

### A. The Removal Here Meets the Two-Part Test of *Trump Old Post Office*.

Section 1442, authorizing federal officers to remove, is straightforward. Before analyzing its text, under the controlling case law, ODC never questioned that the first element of the *Trump Old Post Office* test was easily met here. Nor did ODC contest that Mr. Clark, a lawyer who gave legal advice to the President and took legal positions with his superiors and other colleagues inside the Justice Department, as alleged in the Charges, was acting "for or relating to any act under color of [his] office." 28 U.S.C. § 1442(a)(1). Therefore, to remove, he need only show that he has a colorable federal legal defense. The Answer in this case sets out *51 federal legal defenses* and only 3 local D.C. defenses. *See* Case One, Dkt. # 1-21 at 104-130.

### B. This Case Is Removable Under the Text of Section 1442.

Section 1442(a)(1) provides as follows:

(a) **[1]** *A civil action or criminal prosecution that is* **[2]** *commenced in a State court* and that is **[3]** against or directed to any of the following **[4]** *may be removed by them to the district court of the United States for the district and division embracing the place* wherein it is pending:

(1) The United States or any agency thereof **[5]** *or any officer* (or any person acting under that officer) *of the United States or of any agency thereof,* **[6]** *in an official or individual capacity,* **[7]** *for or relating to any act under color of such office* or on account of any right, title or authority  claimed under any Act of Congress for the

apprehension or punishment of criminals or the collection of the revenue.

The removal of the Charges clearly meets every element of the statute.

**[1]** This case can be seen as either a "civil action or criminal prosecution." *See, e.g., In re Artis*, 883 A.2d at 101 (referring to "a disciplinary case, which is 'quasi-criminal' in nature"). Indeed, the main holding of *In re Artis* is that the Fifth Amendment to the U.S. Constitution applies to disciplinary proceedings like this one. *In re Artis* thereby establishes that D.C. attorney discipline actions are in-part civil and in part criminal actions. They are a procedural hybrid. *See* Case One, Dkt. #1 at 24.

**[2]** For purposes of Section 1442, this case was "commenced in a State Court," because Section 1442(d)(5) defines the "District of Columbia" as a "State." 42 U.S.C. § 1442(d)(5).[11]

**[3]** The Charges here are obviously "against" Mr. Clark within the meaning of Section 1442(a). *See* Case One, Dkt. #1 at 25-26.

**[4]** Mr. Clark removed the case to "the district court of the United States for the district" where the Charges were pending, namely, the U.S. District Court for the

---

[11] The Board of Professional Responsibility is, in turn, part of the DCCA. *See also* D.C. Bar Rule XI, § 1(a) (referring to "the disciplinary jurisdiction of this Court and its Board on Professional Responsibility"); D.C. Bar Rule XI, § 4(e)(4) (the Board appoints Hearing Committee members, such as the members of Hearing Committee #12 assigned to Mr. Clark's case).

District of Columbia.

**[5]** During the time of the Charges, Mr. Clark was indisputably an "officer . . . of the United States or of any agency thereof."

**[6]** The breadth of Section 1442 makes the nature of the cause of action irrelevant as long as it relates to Mr. Clark's conduct while acting "in an official or individual capacity" while at DOJ, which the Charges indisputably do. *See* Case One, Dkt. #1 at 23 JA 23.

**[7]** The Charges were brought against Mr. Clark "for or relating to any act under color of such office." *See id.* at 26-27 JA 26-27.

Additionally, any ambiguity that might be claimed in the statute as to what constitutes a removable matter is dispelled by Section 1442(d)(1) (emphasis added), which states that "[t]he terms 'civil action' and 'criminal prosecution' include ***any proceeding*** (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued." As this Court has held: "'[A]ny' has 'expansive meaning' and … because 'Congress did not add any language limiting the breadth of that word' the court could not impose a limit." *See Ford v. Mabus*, 629 F.3d 198, 206 (D.C. Cir. 2010), *quoting United States v. Gonzales*, 520 U.S. 1, 5 (1997).[12] The Charges

---

[12] Additionally, please also refer to and incorporate Argument Section II here, as that part of the Argument includes an extensive discussion of all of the ways in which

qualify as "any proceeding" and hence they are removable—full stop.

### C. All of the Reasons Given by the District Court for Remand Fail.

The District Court did not number its reasons for rejecting a straightforward reading and application of Section 1442 but we will do so.

**1.**     The District Court began by noting that Congress created the Superior Court of the District of Columbia and the DCCA as Article I Courts in the District of Columbia Court Reform and Criminal Procedure Act of 1970, Pub. L. No. 91-358, § 101, 84 Stat. 473, 475 (1970). *See* Remand Order at 2-3 JA 544-545. That statute specifically does provide that civil actions or criminal prosecutions were removable to federal District Court (and it is silent on prohibiting any type of removal). But it contains nothing contrary to the plain-text point that Section 1442 permits removal of a D.C. Bar ethics proceeding to federal court.

**2.**     The District Court next noted that this same Act gave the power to the DCCA to write rules to discipline members of the D.C. Bar and that the federal courts in the District of Columbia could also discipline D.C. Bar members. *See id*. at 3.[13] Similarly, nothing in those provisions prevents removal under Section 1442.

---

this case is removable in light of Section 1442(d)(1), including because subpoenas were removed in this case.

[13] Pause here and note the internally incoherent nature of the District Court seeing that there is a specific authorization to D.C.'s federal courts to impose discipline while simultaneously the District Court concluded that removability created an unimaginable circumstance Congress did not contemplate.

The District Court, however, wrongly construed the silence of provisions on discipline as barring removal: "No provision for removal of disciplinary actions to the U.S. District Court was included in the original legislation, nor has one been added since. *See* D.C. Code tit. 11, ch. 25." Remand Order at 3 JA 545.

This was an erroneous inference from silence. Section 1442(a) and (d)(1) permit removal of "any proceeding." To require additional specificity from Congress—to demand it particularly list attorney discipline cases as removable—is thus entirely unnecessary and renders superfluous Section 1442(d)(1)'s authorization for removal of "any proceeding." "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." *Lamie v. United States Tr.*, 540 U.S. 526, 533–34 (2004). Courts cannot interpret a statute so as to render any words within that statute as "mere surplusage." "As we have often explained, judges should hesitate to treat words in a regulation or statute as mere surplusage— words of no consequence." *Petit v. Dep't of Educ.*, 675 F.3d 769, 793 (D.C. Cir. 2012). *See also Potter v. United States*, 155 U.S. 438, 446 (1894) (language 'cannot be regarded as mere surplusage; it means something')."[14]

---

[14] At this point in its analysis, the District Court shifts from statutory evolution arguments it thought prevented Section 1442 removal over to an analysis of Supremacy Clause issues concerning whether state or local bars can apply their rules to federal attorneys. *See* Remand Order at 4-8. We respond to the District Court's analysis of the Supremacy issues in Section III below. ***We note, however that this***

**3.** The District Court indicated that we had conceded that D.C. Bar disciplinary cases are neither civil actions nor criminal prosecutions. *See* Remand Order at 13 & 14 JA 555-56. ***But we conceded nothing of the kind and prominently argued that Section 1442(d)(1) made removability a simple matter.*** We did present a nuanced argument that D.C. disciplinary cases, consistent with *In re Artis*, were civil-criminal hybrids in order to justify our alternate ground for removal under Section 1441—something the District Court curiously acknowledges. *See id.* at 14. But nothing in our approach either (a) allowed the District Court to conflate Section 1442 with Section 1441 analysis or (b) accepted ODC's argument that attorney discipline cases are neither civil nor criminal. *See id.*[15]

**4.** The District Court invokes *Leis*, which rejected an out-of-state lawyer claim of right to appear *pro hac vice* in Ohio, finding that the licensing and regulation of lawyers has been historically left to the States and the District. *See* Remand Order at 14. But that case obviously cannot and does not override Section 1442's removal rights for federal officers. *Leis* has nothing to do with removability—an issue

---

***issue is entirely separate from the issue of removability.*** Much like a removed diversity jurisdiction case governed by federal law, there is nothing odd about a removed case of any kind at times potentially being governed by state rather than federal law.

[15] The District Court next deploys a series of arguments designed to prevent removal based on Section 1442's use of the term "civil action." *See* Remand Order at 14. We rebut those points in Argument Section III, *infra*.

controlled by statute and not by generalities as to how American attorneys (most of whom are not federal lawyers) are typically disciplined. Moreover, as we have already pointed out, removal does not itself prescribe the rule of decision for removed disciplinary matters. That is a separate issue we treat below.

5.　　At this point, the District Court invokes other district court cases that have refused to allow removal of bar discipline cases to federal court. *See* Remand Order at 14-15 JA 556-57. Of course, none of the cited cases on these pages are precedential. More importantly, none of them involve Section 1442.[16] Moreover, *Belanger,* 2020 WL 1821826 at *2, and *Kinney*, 2015 WL 3413 at *5, both concede that attorney discipline is "quasi-criminal"—a point that might help block removability under Section 1441 but which ***reinforces removability under Section 1442***. Mr. Clark need only secure removal under either Section 1442 *or* Section 1441, ***not both***. The two statutory inquiries should be kept separate.

6.　　*Kinney* does reference *In re Doe*, 801 F. Supp. 478, 484 (D.N.M. 1992), as the District Court does too. *See* Remand Order at 5, 22, 30, 31 JA 547, 564, 572, 571. But *In re Doe*, which remanded the removed case, should not be received into D.C. Circuit law. This is principally because it was decided ***almost 20 years before***

---

[16] Not *Mass. Bd. of Bar Overseers v. Belanger*, No. 20-cv-10445, 2020 WL 1821826 (D. Mass. Apr. 10, 2020). Not *Colorado v. Ziankovich*, No. 19-cv-3087, 2019 WL 6907460 (D. Colo. Dec. 19, 2019). Not *Sup. Ct. of Cal. v. Kinney*, No. 15-cv-1552, 2015 WL 3413232 (N.D. Cal. May 27, 2015). And not *Ala. Bar Ass'n v. Dickerson*, 240 F. Supp. 732, 734 (D. Ala. 1965).

*Congress* amended Section 1442 to add Section 1441(d)'s "any proceeding" language in 2011. *See* Remand Order at 34 (conceding this point in the statutory evolution) (JA 576). *See also* Argument Section II, *infra* (going into more detail on Section 1442(d)(1)). Before Section 1442(d)(1) was added in 2011, it was one thing to construe Section 1442(a) as creating a trinary scheme of (1) civil actions, (2) criminal prosecutions, and (3) a neither-fish-nor-foul *sui generis* category of actions (to include bar discipline). But any such taxonomy was consigned to oblivion when Congress clarified that Section 1442 applies to "any proceeding." The whole notion of "any proceeding" being removable logically eviscerates the District Court's reliance on the notion of a congressionally posited unremovable third category of *sui generis* actions. No such inference of congressional intent can hold water.

Indeed, even before Section 1442(d)(1) was added in 2011, there was Section 1445. That provision sets out four exclusive categories of actions that are not removable. *See* 28 U.S.C. § 1445(a)-(d). Suffice to say, bar disciplinary matters are not listed as nonremovable. But even more importantly, Section 1445 shows that any attempt to read between the lines of Section 1442's two categories of "civil actions" or "criminal prosecutions" as to imply the existence of a third, non-removable category of *sui generis* actions must be rejected. Allowing the creation of such a third category of actions would constitute judges making, on their own authority, a fifth category of Section 1445 nonremovable action Congress did not itself see fit to

create.

7. The District Court next invokes federalism principles to suggest that removal of criminal matters should be allowed only rarely. *See* Remand Order at 16 JA 558. The court cites *Maryland v. Soper*, 270 U.S. 9, 29 (1926), and *California v. Mesa*, 813 F.2d 960 (9th Cir. 1987), to support this approach. But each of these cases long predates the Removal Clarification Act of 2011 that added Section 1442(d)(1). Moreover, *Mesa* has no applicability here. It was affirmed by the Supreme Court on the ground that a removing federal officer must state at least one colorable defense under federal law. *See Mesa v. California*, 489 U.S. 121, 129-30 (1989). Here, Mr. Clark has set out a host of such defenses in his Answer and ODC has never contested that at least one of them meets the colorability test.

8. The District Court next construes *In re Artis* as stopping short of concluding that a D.C. attorney discipline case is a full-on criminal matter. We never argued to the contrary. The District Court also cites *City of Neodesha v. BP Corp. N. Am.*, 176 F. Supp. 3d 1233, 1243 (D. Kan. 2016), to hold that the use of some criminal procedure elements blended into a civil case does not convert it into a criminal case. *See* Remand Order at 17-18. Again though, the District Court's neither construes Section 1442 broadly nor credits Mr. Clark's theory of the case. Mr. Clark does not have to show that a D.C. Bar discipline case equals a criminal case. Section 1442(d)(1) includes in the definition of "civil actions" and "criminal prosecutions"

**"any proceeding"** in which a judicial order is sought. Congress's plain intention was to put civil actions at one end of a spectrum and criminal actions at the other and capture all of the hybrid blends and interstices between them as well. Therefore, Mr. Clark is entitled to remove this case.

9.    The District Court next notes that attorney discipline protects the public. *See* Remand Order at 18-19 JA 560-61. The District Court asserts that the DCCA holds that the purpose of disbarment is not to punish attorneys. But the U.S. Supreme Court's views to the contrary are dispositive here. *See In re Ruffalo*, 390 U.S. 544, 550 (1968) ("Disbarment, designed to protect the public, is a punishment *or penalty* imposed on the lawyer.") (emphasis added). Similarly, the criminal law both protects the public and punishes its targets. *See, e.g.,* 18 U.S.C. § 3553 (criminal sentences should be imposed to promote respect for the law, provide for deterrence, *and "to protect the public"*). The distinction the District Court sought to apply here to block removal is thus artificial and unavailing. More obviously, removal only relates to the forum, not the substance, and both public purposes can be equally fulfilled in federal court.

10.    The most important precedent—and it is actually true precedent from an appellate court—is *Kolibash*, 872 F.2d 571. In *Kolibash*, a former U.S. Attorney was allowed to remove a West Virginia bar discipline case brought against him. And *Kolibash* reached this outcome even before Section 1441(d)(1) had clarified the

broad approach Congress wanted to apply to federal-officer removals. Judge Wilkinson's opinion for the Fourth Circuit was therefore entirely prescient on how Congress would choose to approach these issues in Section 1442(d)(1).

*Kolibash* rejects federalism-based policy interests as having any relevance to the modern statutory removal analysis, finding that the point of federal-officer removal is to overcome such concerns. *See* 872 F.2d at 575 ("Regulation of the legal profession admittedly implicates significant state interests, but ***the federal interest in protecting federal officials in the performance of their federal duties is paramount***. Many federal officials may be subject to potentially abusive state process.") (emphasis added). And we contend this politicized bar case against Mr. Clark is just such a case. No lawyers were disciplined for taking the losing position in *Bush v. Gore* and certainly no federal lawyers who took a position on a hotly contested election inside the federal government in a draft letter that was never sent have ever been disciplined before.

To rebut *Kolibash*, the District Court argues that it adopts a "functional approach" representing a "change [to] the meaning and the reach of the statute." Remand Order at 20 (quoting *Or. Bureau of Lab. and Ind. ex rel. Richardson v. West Comms.*, 288 F.3d 414, 418–19 (9th Cir. 2002)) JA 562. Respectfully, and especially in the wake of the 2011 amendment to Section 1442, ***the exact opposite is true***. The idea of a nonremovable third category of action under Section 1442 that

conveniently excludes bar-discipline cases is a legal fiction in service of practical hostility to applying Section 1442 *as it was written* (both before and after 2011). Judicial aversion to hearing bar cases is foreclosed by the statute.

What would really "change [the] meaning" of the removal statutes would be judicially amending 28 U.S.C. § 1445 (explicitly setting out which cases are nonremovable) to add bar discipline cases while simultaneously ignoring Section 1441(d)(1)'s "any proceeding" language. The Fourth Circuit got it right: "The federal officer removal statute permits a state action to be adjudicated on the merits in a federal court 'free from local interests or prejudice,' *Arizona v. Manypenny*, 451 U.S. 232, 241-42 (1981), and a federal officer is therefore guaranteed a federal forum in which federal rules of procedure will be applied." *Kolibash*, 872 F.2d at 576-77. This is what Mr. Clark seeks. He wants an adjudication of his jurisdictional objections and his federal defenses in a federal Article III and not in an Article I court and *before* the evidentiary hearing as required by federal law. Indeed, at the initial Hearing Committee #12 stage, one of the three panel members will be *a non-lawyer*. No layperson can realistically be expected to deal properly with the important separation of powers issues this case involves, increasing the risk that Mr. Clark will be hometowned in a City that voted 92% for President Biden in 2020.

The District Court lastly disparages *Kolibash* as out of date. *See* Remand Order at 21 JA 563. Again, with respect, the opposite is true. *Kolibash **anticipated***

Congress's 2011 amendment to Section 1442, creating subsection (d)(1). Nothing renders *Kolibash* "out of date." This Court itself also anticipated Congress's 2011 amendment in *Brown & Williamson*, ("We do not believe Congress used the terms 'civil action,' 'against,' or 'act' in the limited fashion that appellant urges, but rather meant to refer to any proceeding in which state judicial civil power was invoked against a federal official.").

## II. THE DISTRICT COURT ERRED IN REJECTING REMOVAL ON THE GROUND THAT SECTION 1442(D)(1) DID NOT PERMIT THE REMOVAL.

### A. Section 1442(d)(1), Standing Alone, Allows Removal.

Section 1442(d)(1) (added in 2011) is pellucid. It provides as follows:

> The terms "civil action" and "criminal prosecution" include any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued. If removal is sought for a proceeding described in the previous sentence, and there is no other basis for removal, only that proceeding may be removed to the district court.

Coupled with Section 1442(a), Section 1442(d)(1) is a freestanding authorization to remove this case to federal court. This is true for several reasons:

*First*, Section 1441(d)(1) permits the removal of "any proceeding." The term "proceeding" is not defined in Section 1442. Nor is it defined in 28 U.S.C. § 1451, which sets out the definitions for the entirety of the removal provisions in Chapter 89 of Part IV of Title 28 of the U.S. Code. Chapter 7 of the D.C. Bar Board Rules,

however, is entitled "Initiation of Formal ***Proceedings*** Before a Hearing Committee in Contested Matters." (Emphasis added.) *Black's Law Dictionary* (11th ed. 2019), moreover, defines a "proceeding" as follows:

> 1. The regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment. 2. Any procedural means for seeking redress from a tribunal or agency. 3. An act or step that is part of a larger action. 4. The business conducted by a court or other official body; a hearing.

The Bar case against Mr. Clark is plainly a "proceeding" falling in one or more of these categories: (1)(a) it has the characteristics of a "lawsuit," with ODC as a quasi-prosecutor/quasi-plaintiff and Mr. Clark as a defendant/respondent; (1)(b) it is a lawsuit when it reaches the DCCA—which it already has twice so far. Lawsuit "proceedings" are defined to "includ[e] all acts and events between the time of commencement and the entry of judgment"; (2) the disciplinary process here is a "procedural means for seeking redress from a tribunal," since the Hearing Committee #12, the Board, and the DCCA are all "tribunals;" (3) the Hearing Committee #12 and Board processes are "[a]n act or step that is part of a larger action" under the umbrella of the DCCA; and (4) the disciplinary processes involve "a hearing" or other "business conducted by a court or other official body."

***Second***, any claimed ambiguity in Section 1442(d)(1)'s references to "any proceeding" is dispelled by the inclusion of "subpoena[s] for testimony or documents [being] sought or issued." As we set out in the Statement of the Case,

subpoenas were issued here in October 2022 and December 2022. These subpoena were removed—dating back to the first removal on October 17, 2022 and indeed the second and third removals specifically removed the October and December 2022 subpoenas, respectively.

**Third**, Section 1442(d)(1) includes among removable matters not just "subpoenas" but "any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order … is sought or issued." ODC seeks a DCCA order of disbarment.

**Fourth**, the removed subpoena actions can also be seen as "ancillary" to the removal to federal court of the disciplinary processes as a whole, dating back to the first removal. *See Black's Law Dictionary* (11th ed. 2019) (defining "ancillary" as "supplementary; subordinate"). The subpoenas were designed to secure supplemental information to support ODC's Charges. And the subpoena actions are subordinate as well to the overall purpose of the disciplinary proceedings.

**Fifth**, the last sentence of Section 1442(d)(1) reinforces the conclusion that not just the subpoenas—but the whole action as well—are removable. This is because that sentence specifies that "[i]f removal is sought for a proceeding described in the previous sentence, and there is no other basis for removal, only that proceeding may be removed to the district court." There is no reason to spell this out other than to make clear that subpoenas ***can be*** separately removed. And, of course,

this is exactly the ruling this Court made in *Brown & Williamson*, allowing removal of a third-party subpoena to a Congressman.

The last sentence embraces the obvious range of cases where two adverse parties are locked in some form of litigation in a state or local tribunal and one of them subpoenas a federal officer as a third-party witness. Such a witness or document custodian may have no legal interest in the outcome of the proceeding or desire to remove it in its entirety, but if they want to secure a federal forum to contest or limit the subpoena, Section 1442(d)(1) plainly entitles them to do so.

Here, however, Mr. Clark did remove ***the entirety of the proceeding*** on October 17, 2022. He only removed the two subsequent subpoena actions (a) out of an abundance of caution to fend off potential arguments that dual-track litigation in the local fora and in the District Court could occur if he failed to do so; and (b) to combat ODC's intransigence of trying to litigate simultaneously in both until the DCCA temporarily brought the parallel tracks to an end in its January 17, 2023 stay order. Moreover, the last sentence's proviso ("and there is no other basis for removal") makes clear that this case is not one in which there was no other basis for removal than the interest of a third-party witness in contesting a subpoena. Mr. Clark is instead a party to the removed proceeding.

For a host of reasons, the text of Section 1442(d)(1) could not be clearer. It would be absurd to order a remand of a removed subpoena action simply because

the subpoena was issued in connection with a bar disciplinary process. If ODC subpoenaed President Trump in this case, the unambiguous text of 1442(d)(1) would of course allow the President to remove that subpoena to federal court. The same is true for any officer of the United States for a subpoena issued in connection with a state or local proceeding. In *Brown & Williamson*, this Court held that a subpoena issued to a non-party Congressman in a state court contract/tort suit was a removable "civil action"). 62 F.3d 408, 412-15 (D.C. Cir. 1995).

### B. The District Court's Contrary Reasoning Cannot Overcome Section 1442(d)(1)'s Plain Text.

To rebut these powerful textual and logical arguments the District Court relied on Wright and Miller and a handful of cases that predate the amendment to the statute in 2011. *See* Case Three, Dkt. # 8 at 34. This reasoning cannot withstand scrutiny.

*First*, *Wuxi Taihu Tractor Co. v. York Grp.*, 460 Fed. App'x 357, 358–59 (5th Cir. 2012) (per curiam) prominently cites 5th Cir. R. 47.5, which in Rule 47.5(4) provides that "Unpublished opinions issued on or after January 1, 1996, are not precedent, except [in situations inapplicable here]." Federal Rule of Appellate Procedure 32.1(a) allows *Wuxi Taihu Tractor* **to be cited** but that does not make the case precedential. Even more importantly, the case does not address the text of Section 1442(d)(1), which was added in 2011. *See* Case Three, Dkt. # 8 at 34.

*Wuxi Taihu Tractor* was decided in early 2012 and the court there, especially in an unpublished per curiam opinion, may have missed the import of Section

1442(d)(1)'s text. Moreover, the case's focus was on when ancillary actions can be removed separate from the "original state-court lawsuit." 460 Fed. App'x at 358. Of course, that is not this situation. Mr. Clark removed the entirety of the case against him brought by ODC in the local process.

**Second**, the District Court admitted that it was applying a prudential doctrine. *See* Remand Order at 34 JA 576. Of course, no prudential doctrine can override the plain text of Section 1442(d)(1). The District Court relies on Charles A. Wright & Arthur R. Miller, 14C FEDERAL PRACTICE AND PROCEDURE § 3721.1 (4th ed. 2023), to derive this doctrine. But Section 3721.1 of that treatise does not consider the text of Section 1441(d)(1) or even cite to it, let alone carefully analyze how the new statutory language impacts a doctrine sourced exclusively to pre-2011 case law.

**Third**, the District Court cites *Ohio v. Doe*, 433 F.3d 502, 506 (6th Cir. 2006) and *Amistead v. C&M Transp.*, 49 F.3d 43, 45-46 (1st Cir. 1995) as its main sources but, of course, Congress is free to enact a new plain text rule for removal at any time and it did so in 2011 in framing up Section 1442(d)(1). Footnote 27 of Wright & Miller Section 3721.1 cites other authorities but all of them also predate 2011's adoption of Section 1442(d)(1).[17]

---

[17] The District Court did cite *Travelers Prop. Cas. v. Good*, 689 F.3d 714, 724 (7th Cir. 2012). *See* Case Three, Dkt. # 8 at 34. This case is not cited in Wright & Miller. And it is post-2011. However, that case is entirely inapposite because it is a Section 1441-based removal (not a Section 1442-based removal) premised on original diversity jurisdiction under 28 U.S.C. § 1332.

Section 1442(d)(1) must be construed here and applied by its plain textual terms as a matter of first impression. And this is precisely how then-Judge Ketanji Brown Jackson proceeded in *Ratley v. U.S. Postal Serv.*, 953 F. Supp. 2d 270 (D.D.C. 2013). There, she allowed the Post Office to remove a case involving only $341.99 from the Small Claims and Conciliation Branch of the District of Columbia Superior Court pursuant to Section 1442(d)(1). She expressed distaste for the "Post Service decid[ing] to make a federal case out of this," especially as it had ***already won*** the case in Small Claims Branch ***before*** it removed, but she faithfully applied the statute and allowed removal. *See id.* at 272. Surely, this is a better case for removal than *Ratley*. Far more than $341.99 is at stake—Mr. Clark's lawyer livelihood is at stake—and what this case really involves are weighty federal constitutional and statutory interpretation matters that ***affirmatively belong in an Article III court***.

With no truly governing case law to support it (even if prudential case law anywhere could override the plain text of Section 1442(d)(1), which it cannot), the District Court resorted to legislative history, arguing that Section 1442(d)(1)'s only point was to resolve an "inter- and intra-circuit split as to whether State 'pre-suit discovery' laws qualify as civil actions or criminal prosecutions that are removable under § 1442." Remand Order at 34-35 JA 576-77. But it is elementary that this violates the cardinal principle that legislative history cannot be invoked to vary the

text of a statute. *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 186 (2004) ("Because we have held that the text of the statutory reservation clearly excludes sand and gravel, we have no occasion to resort to legislative history."); *Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994) ("[W]e do not resort to legislative history to cloud a statutory text that is clear"). Moreover, it would make no sense to do so as to Section 1442(d)(1), since nothing in the text of that provision suggests that it is limited to allowing the removal of pre-suit discovery cases. ***Section 1442(d)(1) does not even mention pre-suit discovery matters.***

The District Court's planks for reaching its chosen outcome shrink even further. After the flawed legislative history, the District Court next held that to allow removal here would "render state bars toothless to enforce their disciplinary rules, in defiance of section 530B's purpose to subject federal government attorneys to those rules." Remand Order at 35 JA 577. This conclusion does not logically follow at all. As a substantive matter, we dispute that Section 530B authorizes the District of Columbia to exercise disciplinary authority over federal attorneys, especially in the circumstances of this case. But removal does not defeat Section 530B even as Judge Contreras construes that provision; removal simply shifts ***the venue*** for application of the District's disciplinary rules to a federal court governed by the Federal Rules as helmed by federal Article III judges.

The District Court then returned to federalism as a reason not to permit

removal under Section 1442(d)(1). *See id.* at 35. But Mr. Clark was a high-ranking Senate-confirmed official in direct privileged and confidential contact with the President. He did not appear in a state court or in a state tribunal of any other kind. Nor did he appear, as it relates to the Charges, in a local D.C. court. *See* Case One, Dkt. #1 at 2-3, 12-13. The policy concerns that should overwhelmingly break any ties here are ones of federal supremacy and the supremacy of Article III courts over an Article I court (the DCCA) and its sub-court adjuncts like Hearing Committee #12 and the Board. This was Mr. Clark's theory of the removal and it should be credited under *Acker* and *Trump Old Post Office*. *See* Case One, Dkt. #1 at 3-4, 13.

Moreover, there are no ties that can be broken with mere policy analysis in the first place. Section 1442(d)(1)'s textual capaciousness is crystal clear. And it was a violation of the two overarching rules of federal-officer removal analysis—(1) broad construction of Section 1442; and (2) crediting the federal officer's theory of the case—for the District Court here to resort to windy invocations of federalism to override the plain text of the statute. Finally, the DCCA and its adjuncts are not even eligible to invoke federalism. ***The District is a creature of federal law. The District is not a State.*** It has no interests that can trump the interests of the federal Executive Branch in any kind of policy-balancing analysis. For this reason, the District Court also erred, *see* Case Three, Dkt. # 8 at 36, in invoking comity principles going back to *Barrow v. Hunton*, 99 U.S. 80, 82-83 (1878) (coincidentally the oldest case cited

in Wright & Miller). *Barrow* was decided more than 130 years before Section 1442(d)(1) was even a glimmer in the eye of Congress. It has nothing to do with this case and is radically distinguishable as it involves a financial judgment between private parties.

III. **THE DISTRICT COURT ERRED IN REJECTING REMOVAL BECAUSE THE DISTRICT OF COLUMBIA HAS NO AUTHORITY TO DISCIPLINE AN ATTORNEY WORKING ON A CONFIDENTIAL POLICY MATTER INSIDE THE EXECUTIVE BRANCH.**

The District Court on this issue reiterated its erroneous view that we had conceded that D.C. disciplinary matters are not "civil actions." Remand Order at 14. Again, this is a complete misinterpretation of what we argued and improperly mushes together our separate Section 1442 and Section 1441 (in the alternative) grounds of removal.

The District Court cited *Wisconsin v. Pelican Ins. Co.*, 127 U.S. 265, 299 (1888), *overruled on other grounds by Milwaukee County v. M.E. White Co*., 296 U.S. 268 (1935), to characterize this bar case as not a "civil action." But the penal, quasi-criminal nature of bar discipline is no barrier to removal under Section 1442 because it permits removal of "criminal prosecutions," and because Section 1442(d)(1) includes "any proceeding" within the scope of what's removable.

The District Court, circa Remand Order at 22 then concludes, through a convoluted chain of reasoning, that Section 530B impliedly repeals any right of

removal of bar-discipline cases that might have been conferred by Section 1442. There are several fundamental flaws with this analysis.

**First**, Section 530B is not about removal and does not address or preclude removal of this case. There is a specific enumeration of nonremovable actions in Section 1445, and bar-disciplinary proceedings are not listed. Having first extended coverage to "any proceeding" in which a judicial order is sought in Section 1442(d)(1), and then created specific and limited exclusions from the scope of federal-officer removal in Section 1445, elementary principles of statutory construction preclude Section 530B from being contorted into an implied repeal of Section 1442(d)(1) coupled with an implied amendment of the list of nonremovable actions. Statutes may not be judicially amended by adding missing terms:

> We decline the Government's invitation to add an extra clause to the text of § 16913(a). As we long ago remarked in another context, "[w]hat the government asks is not a construction of a statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function." Iselin v. United States, 270 U.S. 245, 251 (1926). Just so here.

*Nichols v. United States*, 578 U.S. 104, 110 (2016) (emphasis added).

Similarly,

> It is a fundamental principle of statutory interpretation that "absent provision[s] cannot be supplied by the courts." A. Scalia & B. Garner, Reading Law: The Interpretation of Legal Texts 94 (2012). To do so "'is not a construction of a statute, but, in effect, an enlargement of it by the court.'" Nichols v. United States, 578 U.S. ——, ——, 136 S.Ct. 1113, 1118 (2016) (quoting Iselin v. United States, 270 U.S. 245, 251 (1926)).

> A textual judicial supplementation is ***particularly inappropriate when, as here, Congress has shown that it knows how to adopt the omitted language or provision***.

*Rotkiske v. Klemm*, 140 S. Ct. 355, 360–61 (2019) (emphasis added). This rule was applied again in 2020 in *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2381 (2020). Multiple clear, recent002C and relevant declarations by the U.S. Supreme Court cannot be ignored, and bar-disciplinary proceedings cannot be added to the list of nonremovable cases by judicial fiat.

***Second***, the removal statute has been amended since Section 530B was adopted in 1998 in ways that are irreconcilable with the pyramid of inferences on which the District Court relies in its implied-repeal analysis. Congress passed the Removal Clarification Act of 2011, making multiple changes to the statute, none of which carve out state or local bar disciplinary authority as a nonremovable topic. *See* Pub. L. 112-51, 136 Stat. 2114 (Nov. 9, 2011). To the contrary, the 2011 amendment clarified that the removal statute covered "any proceeding" and was to be interpreted broadly. *See* House Report: No. 112–17, pt. 1 at 3 (describing purposes of federal removal to protect operations of federal government from "local interests or prejudice").

A later amendment to Section 1442 in 2013 replaced subsection (c) and moved its language to a new subsection (d) with several other new provisions. Pub. L. 112-239, 126 Stat. 1969, § 1087 (Jan. 2, 2013). This amendment added the language now

found in Section 1442(d)(5) defining "State" for purposes of the code section to include the District of Columbia. It is indisputable from this amendment that Congress specifically intended to make Section 1442 removal available to federal officers with respect to actions commenced in the courts of the District of Columbia. This inclusion of the District of Columbia in Section 1442(d)(5) stands in dispositive contrast to its *omission* from the grant of disciplinary authority in Section 530B.

Repeals by implication like that indulged by the District Court are not favored:

> We have repeatedly stated, however, that absent "a clearly expressed congressional intention," … "repeals by implication are not favored," …. An implied repeal will only be found where provisions in two statutes are in "irreconcilable conflict," or where the latter Act covers the whole subject of the earlier one and "is clearly intended as a substitute."

*Branch v. Smith*, 538 U.S. 254, 273 (2003) (emphasis added) (cleaned up). There is no basis for repeal by implication here. There is no irreconcilable conflict because removal only changes the forum, not the substantive law. Equally obviously, there is no whole-subject substitution because Section 530B does not and could not purport to overturn the constitutional doctrine of federal supremacy on which federal-officer removal rests.

Thus, the amendments of Section 1442 in Pub. L. 112-51 and Pub. L. 112-239 to expand and reiterate the right of federal-officer removal refute the conjecture that 28 U.S.C. § 530B's adoption in 1998 somehow placed bar disciplinary actions beyond the reach of the federal-officer removal statute.

"To repeat, the central and grave concern of the statute is that a Federal officer or agent shall not be forced to answer for conduct assertedly within his duties in any but a Federal forum." *North Carolina v. Carr*, 386 F.2d 129, 131 (4th Cir. 1967); "The federal officer removal statute is not 'narrow' or 'limited.'" *Willingham v. Morgan*, 395 U.S. 402, 406 (1969) (citing *Colorado v. Symes*, 286 U.S. 510, 517 (1932)). "In cases like this one, Congress has decided that federal officers, and indeed the federal government itself, require the protection of a federal forum. This policy should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Id.* at 407. *See also Tennessee v. Davis*, 100 U.S. 257, 262-63 (1879).

## CONCLUSION

The District Court's remand order should be reversed and the case should be remanded with instructions for the District Court to begin adjudicating the removed case below. The District Court should also be instructed to immediately notify the Article I tribunals in the District of Columbia to cease adjudicating the case in their local proceedings. We also request that when the merits panel completes its review of the briefing it disagree with the motions panel's denial of a stay and grant one even before oral argument is scheduled.

December 6, 2023                    Respectfully submitted,

                                   */s/ Harry W. MacDougald*

Charles Burnham                    Harry W. MacDougald
                                   Caldwell, Carlson,

Burnham and Gorokhov, PLLC
Suite 300
1750 K Street, NW
Washington DC 20006
(202) 386-6920
charles@burnhamgorokhov.com

Elliott & DeLoach LLP
Suite 1600 Atlanta
Two Ravinia Drive
Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com

*Attorneys for Appellant Jeffrey B. Clark*

# STATUTORY ADDENDUM

## 28 U.S.C. § 1331 Federal question

The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

## 28 U.S.C. § 1441 Removal of civil actions (excerpts)

**(a) Generally.—**

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

\*\*\*

**(c) Joinder of Federal Law Claims and State Law Claims.—**

(1) If a civil action includes—

(A) a claim arising under the Constitution, laws, or treaties of the United States (within the meaning of section 1331 of this title), and

(B) a claim not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute,

the entire action may be removed if the action would be removable without the inclusion of the claim described in subparagraph (B).

(2) Upon removal of an action described in paragraph (1), the district court shall sever from the action all claims described in paragraph (1)(B) and shall remand the severed claims to the State court from which the action was removed. Only defendants against whom a claim described in paragraph (1)(A) has been asserted are required to join in or consent to the removal under paragraph (1).

\*\*\*

## 28 U.S.C. § 1442  Federal officers or agencies sued or prosecuted

(a) A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

(1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

(2) A property holder whose title is derived from any such officer, where such action or prosecution affects the validity of any law of the United States.

(3) Any officer of the courts of the United States, for or relating to any act under color of office or in the performance of his duties;

(4) Any officer of either House of Congress, for or relating to any act in the discharge of his official duty under an order of such House.

(b) A personal action commenced in any State court by an alien against any citizen of a State who is, or at the time the alleged action accrued was, a civil officer of the United States and is a nonresident of such State, wherein jurisdiction is obtained by the State court by personal service of process, may be removed by the defendant to the district court of the United States for the district and division in which the defendant was served with process.

(c) Solely for purposes of determining the propriety of removal under subsection (a), a law enforcement officer, who is the defendant in a criminal prosecution, shall be deemed to have been acting under the color of his office if the officer—

(1) protected an individual in the presence of the officer from a crime of violence;

(2) provided immediate assistance to an individual who suffered, or who was threatened with, bodily harm; or

(3) prevented the escape of any individual who the officer reasonably believed to have committed, or was about to commit, in the presence of the officer, a crime

of violence that resulted in, or was likely to result in, death or serious bodily injury.

(d) In this section, the following definitions apply:

(1) The terms "civil action" and "criminal prosecution" include any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued. If removal is sought for a proceeding described in the previous sentence, and there is no other basis for removal, only that proceeding may be removed to the district court.

(2) The term "crime of violence" has the meaning given that term in section 16 of title 18.

(3) The term "law enforcement officer" means any employee described in subparagraph (A), (B), or (C) of section 8401(17) of title 5 and any special agent in the Diplomatic Security Service of the Department of State.

(4) The term "serious bodily injury" has the meaning given that term in section 1365 of title 18.

(5) The term "State" includes the District of Columbia, United States territories and insular possessions, and Indian country (as defined in section 1151 of title 18).

(6) The term "State court" includes the Superior Court of the District of Columbia, a court of a United States territory or insular possession, and a tribal court.

## 28 U.S.C. § 1445 Nonremovable actions

(a) A civil action in any State court against a railroad or its receivers or trustees, arising under sections 1–4 and 5–10 of the Act of April 22, 1908 (45 U.S.C. 51–54, 55–60), may not be removed to any district court of the United States.

(b) A civil action in any State court against a carrier or its receivers or trustees to recover damages for delay, loss, or injury of shipments, arising under section 11706 or 14706 of title 49, may not be removed to any district court of the United States unless the matter in controversy exceeds $10,000, exclusive of interest and costs.

(c) A civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States.

(d) A civil action in any State court arising under section 40302 of the Violence Against Women Act of 1994 may not be removed to any district court of the United States.

**28 U.S.C. § 1446 Procedure for removal of civil actions**

(a) **Generally.—**

A defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

(b) **Requirements; Generally.—**

(1) The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

(2)

(A) When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action.

(B) Each defendant shall have 30 days after receipt by or service on that defendant of the initial pleading or summons described in paragraph (1) to file the notice of removal.

(C) If defendants are served at different times, and a later-served defendant files a notice of removal, any earlier-served defendant may consent to the removal even though that earlier-served defendant did not previously initiate or consent to removal.

(3) Except as provided in subsection (c), if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

\*\*\*

**(d) Notice to Adverse Parties and State Court.—**

Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded.

\*\*\*

**(g)** Where the civil action or criminal prosecution that is removable under section 1442(a) is a proceeding in which a judicial order for testimony or documents is sought or issued or sought to be enforced, the 30-day requirement of subsection (b) of this section and paragraph (1) of section 1455(b) is satisfied if the person or entity desiring to remove the proceeding files the notice of removal not later than 30 days after receiving, through service, notice of any such proceeding.

## 28 U.S.C. § 1455 Procedure for removal of criminal prosecutions

### (a) Notice of Removal.—

A defendant or defendants desiring to remove any criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such prosecution is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

### (b) Requirements.—

(1) A notice of removal of a criminal prosecution shall be filed not later than 30 days after the arraignment in the State court, or at any time before trial, whichever is earlier, except that for good cause shown the United States district court may

enter an order granting the defendant or defendants leave to file the notice at a later time.

(2) A notice of removal of a criminal prosecution shall include all grounds for such removal. A failure to state grounds that exist at the time of the filing of the notice shall constitute a waiver of such grounds, and a second notice may be filed only on grounds not existing at the time of the original notice. For good cause shown, the United States district court may grant relief from the limitations of this paragraph.

(3) The filing of a notice of removal of a criminal prosecution shall not prevent the State court in which such prosecution is pending from proceeding further, except that a judgment of conviction shall not be entered unless the prosecution is first remanded.

(4) The United States district court in which such notice is filed shall examine the notice promptly. If it clearly appears on the face of the notice and any exhibits annexed thereto that removal should not be permitted, the court shall make an order for summary remand.

(5) If the United States district court does not order the summary remand of such prosecution, it shall order an evidentiary hearing to be held promptly and, after such hearing, shall make such disposition of the prosecution as justice shall require. If the United States district court determines that removal shall be

permitted, it shall so notify the State court in which prosecution is pending, which shall proceed no further.

**(c) Writ of Habeas Corpus.—**

If the defendant or defendants are in actual custody on process issued by the State court, the district court shall issue its writ of habeas corpus, and the marshal shall thereupon take such defendant or defendants into the marshal's custody and deliver a copy of the writ to the clerk of such State court.

**28 U.S.C. § 530B Ethical standards for attorneys for the Government**

  **(a)** An attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State.

  **(b)** The Attorney General shall make and amend rules of the Department of Justice to assure compliance with this section.

  **(c)** As used in this section, the term "attorney for the Government" includes any attorney described in section 77.2(a) of part 77 of title 28 of the Code of Federal Regulations and also includes any independent counsel, or employee of such a counsel, appointed under chapter 40.

**28 C.F.R. § 77.1 Purpose and authority.**

**(a)** The Department of Justice is committed to ensuring that its attorneys perform their duties in accordance with the highest ethical standards. The purpose of this part is to implement 28 U.S.C. 530B and to provide guidance to attorneys concerning the requirements imposed on Department attorneys by 28 U.S.C. 530B.

**(b)** Section 530B requires Department attorneys to comply with state and local federal court rules of professional responsibility, but should not be construed in any way to alter federal substantive, procedural, or evidentiary law or to interfere with the Attorney General's authority to send Department attorneys into any court in the United States.

**(c)** Section 530B imposes on Department attorneys the same rules of professional responsibility that apply to non–Department attorneys, but should not be construed to impose greater burdens on Department attorneys than those on non–Department attorneys or to alter rules of professional responsibility that expressly exempt government attorneys from their application.

**(d)** The regulations set forth in this part seek to provide guidance to Department attorneys in determining the rules with which such attorneys should comply.

**28 C.F.R. § 77.2 Definitions.**

As used in this part, the following terms shall have the following meanings, unless the context indicates otherwise:

(a) The phrase attorney for the government means the Attorney General; the Deputy Attorney General; the Solicitor General; the Assistant Attorneys General for, and any attorney employed in, the Antitrust Division, Civil Division, Civil Rights Division, Criminal Division, Environment and Natural Resources Division, and Tax Division; the Chief Counsel for the DEA and any attorney employed in that office; the Chief Counsel for ATF and any attorney employed in that office; the General Counsel of the FBI and any attorney employed in that office or in the (Office of General Counsel) of the FBI; any attorney employed in, or head of, any other legal office in a Department of Justice agency; any United States Attorney; any Assistant United States Attorney; any Special Assistant to the Attorney General or Special Attorney duly appointed pursuant to 28 U.S.C. 515; any Special Assistant United States Attorney duly appointed pursuant to 28 U.S.C. 543 who is authorized to conduct criminal or civil law enforcement investigations or proceedings on behalf of the United States; and any other attorney employed by the Department of Justice who is authorized to conduct criminal or civil law enforcement proceedings on behalf of the United States. The phrase attorney for the government also includes any independent counsel, or employee of such counsel, appointed under chapter 40

of title 28, United States Code. The phrase attorney for the government does not include attorneys employed as investigators or other law enforcement agents by the Department of Justice who are not authorized to represent the United States in criminal or civil law enforcement litigation or to supervise such proceedings.

(b) The term case means any proceeding over which a state or federal court has jurisdiction, including criminal prosecutions and civil actions. This term also includes grand jury investigations and related proceedings (such as motions to quash grand jury subpoenas and motions to compel testimony), applications for search warrants, and applications for electronic surveillance.

(c) The phrase civil law enforcement investigation means an investigation of possible civil violations of, or claims under, federal law that may form the basis for a civil law enforcement proceeding.

(d) The phrase civil law enforcement proceeding means a civil action or proceeding before any court or other tribunal brought by the Department of Justice under the authority of the United States to enforce federal laws or regulations, and includes proceedings related to the enforcement of an administrative subpoena or summons or civil investigative demand.

(e) The terms conduct and activity means any act performed by a Department attorney that implicates a rule governing attorneys, as that term is defined in paragraph (h) of this section.

(f) The phrase Department attorney[s] is synonymous with the phrase "attorney[s] for the government" as defined in this section.

(g) The term person means any individual or organization.

(h) The phrase state laws and rules and local federal court rules governing attorneys means rules enacted or adopted by any State or Territory of the United States or the District of Columbia or by any federal court, that prescribe ethical conduct for attorneys and that would subject an attorney, whether or not a Department attorney, to professional discipline, such as a code of professional responsibility. The phrase does not include:

(1) Any statute, rule, or regulation which does not govern ethical conduct, such as rules of procedure, evidence, or substantive law, whether or not such rule is included in a code of professional responsibility for attorneys;

(2) Any statute, rule, or regulation that purports to govern the conduct of any class of persons other than attorneys, such as rules that govern the conduct of all litigants and judges, as well as attorneys; or

(3) A statute, rule, or regulation requiring licensure or membership in a particular state bar.

(i) The phrase state of licensure means the District of Columbia or any State or Territory where a Department attorney is duly licensed and authorized to practice as an attorney. This term shall be construed in the same manner as it has been construed

pursuant to the provisions of Pub. L. 96–132, 93 Stat. 1040, 1044 (1979), and Sec. 102 of the Departments of Commerce, Justice and State, the Judiciary, and Related Agency Appropriations Act, 1999, Pub.L. 105–277.

(j)(1) The phrase *where such attorney engages in that attorney's duties* identifies which rules of ethical conduct a Department attorney should comply with, and means, with respect to particular conduct:

(i)  If there is a case pending, the rules of ethical conduct adopted by the local federal court or state court before which the case is pending; or

(ii) If there is no case pending, the rules of ethical conduct that would be applied by the attorney's state of licensure.

(2) A Department attorney does not "engage[ ] in that attorney's duties" in any states in which the attorney's conduct is not substantial and continuous, such as a jurisdiction in which an attorney takes a deposition (related to a case pending in another court) or directs a contact to be made by an investigative agent, or responds to an inquiry by an investigative agent. Nor does the phrase include any jurisdiction that would not ordinarily apply its rules of ethical conduct to particular conduct or activity by the attorney.

(k) The phrase *to the same extent and in the same manner as other attorneys* means that Department attorneys shall only be subject to laws and rules of ethical conduct governing attorneys in the same manner as such rules apply to non–Department

attorneys. The phrase does not, however, purport to eliminate or otherwise alter state or federal laws and rules and federal court rules that expressly exclude some or all government attorneys from particular limitations or prohibitions.

**28 C.F.R. § 77.3 Application of 28 U.S.C. 530B.**

In all criminal investigations and prosecutions, in all civil investigations and litigation (affirmative and defensive), and in all civil law enforcement investigations and proceedings, attorneys for the government shall conform their conduct and activities to the state rules and laws, and federal local court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State, as these terms are defined in § 77.2 of this part.

**28 C.F.R. § 77.4 Guidance.**

  **(a)** Rules of the court before which a case is pending. A government attorney shall, in all cases, comply with the rules of ethical conduct of the court before which a particular case is pending.

\*\*\*

  **(c)** Choice of rules where there is no pending case.

(1) Where no case is pending, the attorney should generally comply with the ethical rules of the attorney's state of licensure, unless application of traditional choice-of-law principles directs the attorney to comply with the ethical rule of another jurisdiction or court, such as the ethical rule adopted by the court in which the case is likely to be brought.

(2) In the process of considering the factors described in paragraph (c)(1) of this section, the attorney is encouraged to consult with a supervisor or Professional Responsibility Officer to determine the best course of conduct.

   **(d)** Rules that impose an irreconcilable conflict. If, after consideration of traditional choice-of-law principles, the attorney concludes that multiple rules may apply to particular conduct and that such rules impose irreconcilable obligations on the attorney, the attorney should consult with a supervisor or Professional Responsibility Officer to determine the best course of conduct.

   **(e) Supervisory attorneys.** Each attorney, including supervisory attorneys, must assess his or her ethical obligations with respect to particular conduct. Department attorneys shall not direct any attorney to engage in conduct that violates section 530B. A supervisor or other Department attorney who, in good faith, gives advice or guidance to another Department attorney about the other attorney's ethical obligations should not be deemed to violate these rules.

\*\*\*

**28 C.F.R. § 77.5 No private remedies.**

The principles set forth herein, and internal office procedures adopted pursuant hereto, are intended solely for the guidance of attorneys for the government. They are not intended to, do not, and may not be relied upon to create a right or benefit, substantive or procedural, enforceable at law by a party to litigation with the United States, including criminal defendants, targets or subjects of criminal investigations, witnesses in criminal or civil cases (including civil law enforcement proceedings), or plaintiffs or defendants in civil investigations or litigation; or any other person, whether or not a party to litigation with the United States, or their counsel; and shall not be a basis for dismissing criminal or civil charges or proceedings or for excluding relevant evidence in any judicial or administrative proceeding. Nor are any limitations placed on otherwise lawful litigative prerogatives of the Department of Justice as a result of this part.

# CERTIFICATE OF SERVICE

I certify that on March 28, 2024 the foregoing document was served on all parties or their counsel of record through the CM/ECF system.


*/s/ Harry W. MacDougald*

Harry W. MacDougald
Caldwell, Carlson,
    Elliott & DeLoach LLP
Suite 1600 Atlanta
Two Ravinia Drive
Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with Fed. R. App. P. 32(a)(7)(B) because it contains 12,974 words, excluding the portions of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1), according to the count of Microsoft Word.

I certify that this brief complies with the typeface and type-style requirements of Fed. R. App. P. Rule 32(a)(5)-(6) because it has been prepared in a proportionally spaced 14-point font, Times New Roman.

*/s/ Harry W. MacDougald*

Harry W. MacDougald
Caldwell, Carlson,
    Elliott & DeLoach LLP
Suite 1600 Atlanta
Two Ravinia Drive
Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com